McCREERY ENGINEERING CO. v. MASSACHUSETTS FAN CO. et al.

(Circuit Court of Appeals, First Circuit. April 9, 1912.)

No. 937.

1. PATENTS (§ 30*)—INVENTION—REDUCTION TO PRACTICE.

Drawings and verbal description of an invention, however completely they may show conception, are insufficient to establish reduction to practice, unless filed as an application for a patent, when they are accepted as a constructive reduction to practice.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 34; Dec. Dig. § 30.*]

2. PATENTS (§ 76*)—VALIDITY—INVENTION "ON SALE" FOR MORE THAN TWO YEARS.

Proof of a mere contract to construct from plans, and to deliver in the future, a machine or manufacture not shown to have been previously built, is insufficient to establish that the machine or manufacture was "on sale" within the meaning of Rev. St. § 4886 (U. S. Comp. St. 1901, p. 3382), so as to defeat a patent therefor not applied for until more than two years after such contract was made, in the absence of any evidence that the invention had been reduced to practice at the time the executory contract was made.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 92, 98; Dec. Dig. § 76.*]

3. PATENTS (§ 191*)—INFRINGEMENT—ATTACHMENT OF INFRINGING ARTICLE TO REALTY.

The attachment of patented machinery to a building so that it becomes part of the realty does not give rise to rights of use against the patentee.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 268; Dec. Dig. § 191.*]

4. COURTS (§ 303*)—JURISDICTION OF FEDERAL COURTS—SUIT AGAINST STATE.

A suit by the owner of a patent for a ventilating apparatus against county commissioners to enjoin the use of an infringing apparatus, which has been installed in a county courthouse in Massachusetts, is not a suit against the state so as to be beyond the jurisdiction of a federal court, under Const. Amend. 11, since the state has no title to the property affected, which is in the county, and although the building is to some extent devoted to state uses, it cannot be assumed that an injunction would interfere with such use.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 191, 192; Dec. Dig. § 303.*

What are suits against states within the meaning of constitutional amendment 11, see note to Murray v. Wilson Distilling Co., 92 C. C. A. 25.]

Appeal from the Circuit Court of the United States for the District of Massachusetts.

Suit in equity by the McCreery Engineering Company against the Massachusetts Fan Company and the County Commissioners of Essex County. Decree for defendants (186 Fed. 846), and complainant appeals. Reversed.

Fred L. Chappell (Samuel D. Elmore, on the brief), for appellant.

Odin Roberts (Roberts, Roberts & Cushman, Charles D. Woodberry, Waldron H. Rand, Jr., and Stewart, Coolidge & Rand, on the brief), for appellees.

Before PUTNAM and ALDRICH, Circuit Judges, and BROWN, District Judge.

BROWN, District Judge. This is an appeal from the judgment of the Circuit Court dismissing a bill for infringement of letters patent No. 917,185, issued April 6, 1909, on an application of W. E. Taylor, filed March 5, 1908, for apparatus for tempering and purifying air.

The Circuit Court found that the patent was invalid for the reason that the invention was on sale for more than two years prior to the application for the patent.

The chief reliance of the defendant on this issue is the record made upon behalf of the patentee to the Commissioner of Patents, with statements and disclosures of the file-wrapper and contents. The facts relied upon by the defendant are briefly that on February 27, 1905, Taylor, the patentee, made proposals to a building committee of the Second Church of Christ, Scientist, and to a Kansas City concern for the construction of the apparatus described and claimed in the patent in suit and quoted a price; that thereupon a contract was entered into March 16, 1905, under the terms of which the work under the contract was to be completed February 27, 1906; but that the work was not completely installed upon that date, but was completed and paid for July 3, 1906.

A question is raised of the sufficiency of the record to show that the contract was based upon completed drawings and specifications, but for the purposes of this case this may be assumed.

Upon the whole record, nevertheless, there is a failure of proof that the apparatus of the patent in suit had been actually constructed at any time prior to March 5, 1906.

There is proof of an executory contract for future construction, but there is nothing sufficient to show that the invention had ever been reduced to practice prior to March 5, 1906, two years before the application date, March 5, 1908.

[1] That drawings and verbal description of the invention, however completely they may show conception, are insufficient to establish reduction to practice unless filed as an application for a patent, when they are accepted as a constructive reduction to practice, was decided by this court in Automatic Weighing Machine Co. v. Pneumatic Scale Corporation, 166 Fed. 288, 92 C. C. A. 206.

The appellees contend "that where an inventor, having his invention in such condition that he can apply for a patent upon it," offers to sell the thing patented, there is an instance of "on sale," regardless of whether a physical embodiment of the invention be existent or nonexistent.

It is true that, having a complete description by words and drawings, the inventor may go into the Patent Office with a good application, though he has never embodied his invention in a machine or manufacture.

It also seems to be settled for this circuit by Automatic Weighing Machine Company v. Pneumatic Scale Corporation, 166 Fed. 288, 298, 92 C. C. A. 206, that a complete conception thus evidenced must be followed by either actual reduction to practice or by constructive reduction to practice, i. e., an application for a patent. It was said:

"A conception of this character is not a complete invention under the patent laws. It may constitute an invention in a popular sense, but it does not make the inventor 'the original and first inventor under the statutes.'"

It may be further said that not only in a popular sense, but in a scientific sense, a conception of this character reduced to text and drawings may furnish satisfactory evidence of the completion of the intellectual act of invention.

There is, perhaps, a certain inconsistency in holding that drawings and text filed in the Patent Office show completed invention, but that exhibited to others they prove only conception and not completed invention. The distinction is not scientific, but is merely practical, based upon considerations of public policy. The rule is simply that one who in a scientific sense is entitled to credit as a first inventor has rights to a patent and as against other patentees only under certain conditions. He must follow his act of invention by recording it in the Patent Office, or put it into physical form.

There are reasons, however, requiring that we should adopt a view of the effect of private drawings which will be consistent in different applications of the patent law.

The law should encourage the inventor to embody his invention in practical form, even though it excuses him from doing so if he files his application in the Patent Office.

Frequently the first step towards a reduction to practice is the taking of drawings of his invention to third parties to get an order for the machine. It would be a harsh rule to make his application for assistance for reduction to practice a placing of a completed invention on sale.

[2] We are of the opinion that proof of a mere contract to construct from plans and to deliver in future a machine or manufacture not proven to have been previously completed, falls short of proof that the machine or invention was "on sale." The distinction between an executory contract to construct and to pass title in the future and putting an article "on sale" is substantial and is not merely one of the "witty diversities" of the law of sales. Especially is that distinction important when such an executory contract is for the manufacture or construction which constitutes the first reduction to practice.

That inventors who have reduced their conceptions to the shape of drawings or descriptions and have endeavored to enlist capital by offering to construct and deliver a machine in the future should, by the display of drawings and offers to construct, be regarded as having placed the machine "on sale," would involve a departure from the intention of the patent statute as well as from the ordinary significance of language.

The opinion of the Circuit Court of Appeals of the Second Circuit in National Cash Register Co. v. American Cash Register Co., 178 Fed. 79, 101 C. C. A. 569, does not support the defendant's contention. That case decides merely that the manufacture of a machine upon an order for its construction followed by its delivery and acceptance constitutes a sale within the patent statute. This is far from supporting the contention that regardless of subsequent deliv-

ery and acceptance the article is on sale and that an agreement to construct is a putting on sale.

In cases where delivery and acceptance are complete, the distinction between delivery and acceptance upon a previous order and without a previous order has no substantial relation to the purpose of the statute. The completion of the transaction by delivery and acceptance affords evidence that the article was "on sale" within the meaning of the statute.

Neither does the case of sale by sample, or by photograph of an existing thing, aid the defendant. The existence of a sample proves reduction to practice, as does a photograph.

In Norfolk & West Ry. Co. v. Sims, 191 U. S. 441, 447, 24 Sup. Ct. 151, 152 (48 L. Ed. 254), it was said:

"A sale really consists of two separate and distinct elements: First, a contract of sale, which is completed when the offer is made and accepted; and, second, a delivery of the property, which may precede, be accompanied by, or follow the payment of the price, as may have been agreed upon by the parties."

Both in sections 4920 and 4866, Rev. St. (U. S. Comp. St. 1901, pp. 3394, 3382), the words "public use or on sale" are coupled together.

There is authority for holding that an offer to sell a completed article puts the article "on sale" at the time of the offer. Upon this question, however, we reserve our opinion, for there is reason to doubt whether an offer to deliver an article at a future time is in substance a putting on sale before the time of actual delivery.

No amount of public use within two years is of any effect even if in pursuance of a contract made before the two years. The putting "on sale" intended by the statute is more or less analogous to a public use, and has regard to actual and completed transactions, and not to agreements which contemplate both a future production and a future transfer of title.

The learned judge in the Circuit Court stated that there is nothing in the record to show that the apparatus in question was the first constructed by the complainant, or that the contract contemplated anything experimental, and cites Swain v. Holyoke Machine Co., 109 Fed. 154, 48 C. C. A. 265, to the point that the burden of proving that the use was experimental rested upon the patentee. That case does not, however, aid the defendant. A use had been proved; therefore the burden to prove it experimental and to take it out from the statute was a burden of meeting evidence sufficient to invalidate the patent. Under the defense that the machine was "on sale," the burden rests upon the defendant to show that the machine existed as a complete article of sale, not on paper, but in fact. In the absence of such proof, the case is not brought within the statute, and therefore no exception need be proved. In fact, if a sale were proved, it is doubtful if the purpose for which it was made could be material.

Assume that the article never was completed in accordance with the existing contract; could it be fairly said that it was ever on sale? Not unless we stretch the words "on sale" to that meaning

most unfavorable to the inventor, and give them their worst construction against him.

Even if it be said that the words "on sale" have various popular meanings which include the offer of existing goods for present transfer of title, and the offer of future goods for a future transfer of title, it does not follow that in the construction of this statute we should ignore the substantial distinction between a present offer of existing goods and an executory contract to make and transfer at a future time.

It seems probable that a more reasonable interpretation of section 4866 and section 4920 can be had by reference to this distinction than by an attempt to disregard it and make the statute include all the popular and inexact meanings of the words "on sale."

In the present case, however, we are required only to pass upon the sufficiency of the facts relied upon by the defendant to prove this defense.

In the absence of evidence that the invention had been reduced to practice at the time of this executory contract for future construction, or at any time prior to March 5, 1906, we are of the opinion that it cannot be said that the machine or manufacture had been "on sale" for more that two years prior to the application date.

We are of the opinion that the Circuit Court was in error in finding the patent invalid for the reasons assigned.

We have next to consider whether the Circuit Court erred in sustaining the pleas of the defendant county commissioners of the county of Essex, and in dismissing the bill as to them. The bill was brought against the Massachusetts Fan Company, which installed the ventilating apparatus in a courthouse at Salem, and against the defendants Kimball, Poor, and Grosvenor as county commissioners.

By pleas the county commissioners alleged, inter alia:

"That ever since said apparatus was installed in said building by said defendant Massachusetts Fan Company as aforesaid, it has formed and now forms part of the realty in and a fixture of a registry of deeds and courthouse of said county; and that said building is held by the inhabitants of said county for the uses and purposes of the commonwealth of Massachusetts in the administration of the executive and judicial duties of its government and for no other use or purpose; and except as these defendants as county commissioners have been or are officers or custodians of and for said commonwealth and county, acting under and in obedience to the statutes of said commonwealth and to represent said county in the care of its property, these defendants have done no act with or in respect to the said 'air washing' apparatus, etc."

In the opinion of the learned Circuit Judge it was said:

"It was assumed at the argument that they rested their defense on the ground that, while the county of Essex may be a corporation suable, yet the county courthouse is an agency of the commonwealth, and that no injunction will issue to restrain a state from using a courthouse for the state's purposes.

"If the defendant's contention concerning the nature of the courthouse is correct. this case is governed by Belknap v. Schild, 161 U. S. 10 [16 Sup. Ct. 443, 40 L. Ed. 599], and International Postal Supply Co. v. Bruce, 194 U. S. 601 [24 Sup. Ct. 820, 48 L. Ed. 1134]. In the latter case the Supreme Court

refused an injunction against a postmaster from using an infringing device then leased to the United States.

"As to the defendant commissioners, the only question here left open is, therefore, this: Is the county courthouse such an agency of the commonwealth as to be like a post office in the latter's relation to the United States?"

Upon consideration of Morse v. Norfolk Co., 170 Mass. 555, 556, 49 N. E. 925, Prince v. Crocker, 166 Mass. 347, 360, 44 N. E. 446, 32 L. R. A. 610, Opinion of Justices, 167 Mass. 599, 600, 46 N. E. 118, and Mass. Rev. Laws, c. 20, generally, and specially sections 5 and 24, the learned judge was of the opinion that the duty of commissioners to build and equip courthouses is a duty or function which concerns the people of the state at large, and that this duty to maintain a courthouse once erected seems to be of the same sort, and that no injunction should issue to restrain the defendant commissioners from operating the ventilating machinery, even if they thereby infringe the complainant's patent. The bill was dismissed as against the county commissioners, but without prejudice to an action at law against them individually for infringement.

Upon its main brief the defendant contends that the bill complains of acts done by the commonwealth by its duly authorized officers and servants, and prays for a decree which will operate solely against the commonwealth; that therefore under the eleventh amendment to the Constitution the court is without jurisdiction. Morse v. County of Norfolk, 170 Mass. 555, 49 N. E. 925, In re Worcester County, 102 Fed. 808, 42 C. C. A. 637, Connors v. Stone, 177 Mass. 424, 59 N. E. 71, and Worcester Court v. Worcester, 116 Mass. 193, 17 Am. Rep. 159, are cited to show that in constructing the courthouse the commissioners acted under the laws of the state and not as agents for the county.

It is further contended that an injunction against the commissioners as custodians of said building to prevent future use is one which will effectively operate solely against the commonwealth, and that therefore the suit is within the constitutional prohibition.

Upon their reply brief the defendants restate the question as follows:

"The question raised by these pleas is whether these defendants, sued in their official capacity, can be enjoined, with their successors, from using a part of the realty of a county courthouse."

[3] Assume that the apparatus has been so attached to realty as to become part thereof as the real property of the county; nevertheless it does not follow that the complainant's patented invention has become real estate. The attachment of patented machinery to a building so that it becomes part of the realty does not give rise to rights of use against a patentee.

In Belknap v. Schild it was said:

"Title in the thing manufactured does not give the right to use the patented invention; no more does the patent right in the invention give title in the thing made in violation of the patent."

[4] In Belknap v. Schild an injunction was denied for the reason that the caisson gates were the property of the United States, and that no injunction could be issued to restrain or control the use

of property already in its possession. It was said (page 25 of 161 U. S., page 448 of 16 Sup. Ct. [40 L. Ed. 599]):

"The United States then has both the title and possession of the property."

International Postal Supply Co. v. Bruce, 194 U. S. 601, 24 Sup. Ct. 820, 48 L. Ed. 1134, was held to be governed by Belknap v. Schild, 161 U. S. 10, 16 Sup. Ct. 443, 40 L. Ed. 599. It was said of that case:

"The title of the United States to the caisson gates was admitted, and therefore the United States was a necessary party to a suit which was intended to deprive it of the incident of title, the right to use the gate."

It was said also concerning the right of the United States in certain canceling and postmarking machines:

"In the case at bar the United States is not the owner of the machines, it is true, but it is a lessee in possession, for a term which has not expired. It has a property, a right in rem, in the machines, which, though less extensive than absolute ownership, has the same incident of a right to use them while it lasts."

In these cases an injunction against use was refused, on the ground that use was an incident of a general or special property of the United States in the structure embodying the patented device.

It was held:

"That the court could not interfere with an object of property unless it had before it the person entitled to the thing."

And this proposition was held to extend to an injunction against the use of the thing as well as to a destruction of it or to a removal of the part which infringed.

The plea does not allege that the state of Massachusetts has title to the property, either general or special. The use of the ventilating apparatus which the bill seeks to enjoin is therefore, so far as appears from the plea, not a use which is an incident to property of the state of Massachusetts. The effect of the plea is to state title in the county, and a holding by the county for the uses of the commonwealth.

The proposition, said to be the turning point of Belknap v. Schild, that the court could not interfere with an object of property unless it had before it the person entitled to the thing, is not applicable in the present case, for the reason that the exemption from suit under amendment 11 of the Constitution is applicable only to the state and not to counties.

"Neither public corporations nor political subdivisions are clothed with the immunity from suit which belongs to the state alone by virtue of its sovereignty." Hopkins v. Clemson College, 221 U. S. 636, 31 Sup. Ct. 654, 55 L. Ed. 890, 35 L. R. A. (N. S.) 243.

Conceding, therefore, that when a general or special title to property is in the state, an injunction against its use will be denied on the ground of the state's immunity from suit, does it follow that the state is a party to a suit directly affecting the property of the county but only indirectly affecting the public use? The cases of

Belknap v. Schild and International Postal Supply Co. v. Bruce do not go to this extent.

The state may not by injunction be deprived of the use of its property; this is determined. The present case, however, presents the question whether a suit is in effect against the state, which seeks to enjoin county commissioners from a use of county property supplied by the county for a public use.

Revised Laws of Massachusetts, c. 20, § 5, is as follows:

"Each county except Suffolk shall provide suitable court houses, jails, houses of correction, fireproof offices and other necessary public buildings for the use of the county, etc."

Section 24. The commissioners shall have authority—

"To provide for erecting and repairing court houses, jails and other necessary public buildings within and for the use of their county, but no money shall be paid or liability incurred for such erection or repairs in excess of the amount specifically authorized by the general court therefor, except for the repair in case of emergency.

"To represent the county, and to have care of its property and the management of its business affairs in all other cases not expressly provided for."

The special act of the Legislature, chapter 423, Acts of 1905, authorizes the construction of a building by the county commissioners; presumably, however, in pursuance of the provisions of general law requiring each county to provide such buildings. The act of the county commissioners in contracting for a public building "within and for the use of their county" is a provision "for the use of the county," according to the terms of both section 5 and section 24 of chapter 20.

It is of course apparent that no law of the state of Massachusetts expressly or by implication authorizes the county commissioners to purchase, or to supply to the county, the property of a third person without acquiring a legal title thereto. When a legal title is acquired, however, it is the title of the county, and the real estate of the county may be conveyed by deed of the commissioners. Chapter 20, § 4.

While it is true that county commissioners are not mere agents of the county, and have some functions which concern the people of the state at large (Morse v. Norfolk County, 170 Mass. 555, 49 N. E. 925; Prince v. Crocker, 166 Mass. 347, 360, 44 N. E. 446, 32 L. R. A. 610; Opinions of Justices, 167 Mass. 599, 600, 46 N. E. 118), yet buildings erected by them under the provisions of law brought to our attention in this case are the property of the county, a body politic and corporate, "to sue and be sued, to purchase and hold for the use of the county, personal estate and lands lying within its limits, and to make necessary contracts and do necessary acts relative to its property and affairs."

The mere fact that the bill is directed against officials who assume to act in a public capacity does not make the suit one against the state.

In Ex parte Young, 209 U. S. 157, 28 Sup. Ct. 453, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, it was said:

"In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.

" * * * The fact that the state officer by virtue of his office has some connection with the enforcement of the act is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material as long as it exists.

" * * * An injunction to prevent him from doing that which he has no legal right to do is not an interference with the discretion of an officer."

Ex parte Young was followed in Western Union Tel. Co. v. Andrews, 216 U. S. 165, 30 Sup. Ct. 286, 54 L. Ed. 430.

If state officials claiming to act under an unconstitutional act may be enjoined because the act is a nullity, it should follow that they may be enjoined from doing without even the color of statutory authority illegal acts affecting complainant's property rights.

In Philadelphia Co. v. Stimson, 223 U. S. 605, 32 Sup. Ct. 340, 56 L. Ed. —— (decided March 4, 1912), the Supreme Court of the United States shows clearly that an officer acting in excess of authority or under an authority not validly conferred is subject to the same principle applied to state officers seeking to enforce unconstitutional enactments.

"If the conduct of the defendant constitutes an unwarrantable interference with property of the complainant, its resort to equity for protection is not to be defeated upon the ground that the suit is one against the United States. The exemption of the United States from suit does not protect its officers from personal liability to persons whose rights of property they have wrongfully invaded. Little v. Barreme, 2 Cranch, 169 [2 L. Ed. 243]; United States v. Lee, 106 U. S. 196, 200, 221 [1 Sup. Ct. 240, 27 L. Ed. 171]; Belknap v. Schild, 161 U. S. 10, 18 [16 Sup. Ct. 443, 40 L. Ed. 599]; Tindal v. Wesley, 167 U. S. 204 [17 Sup. Ct. 770, 42 L. Ed. 137]; Scranton v. Wheeler, 179 U. S. 141, 152 [21 Sup. Ct. 48, 45 L. Ed. 126]. And in case of an injury threatened by his illegal action, the officer cannot claim immunity from injunction process. The principle has frequently been applied with respect to state officers seeking to enforce unconstitutional enactments. Osborn v. Bank of United States, 9 Wheat. 738, 843, 868 [6 L. Ed. 204]; Davis v. Gray, 16 Wall. 203 [21 L. Ed. 447]; Pennoyer v. McConnaughy, 140 U. S. 1, 10 [11 Sup. Ct. 699, 35 L. Ed. 363]; Scott v. Donald, 165 U. S. 107, 112 [17 Sup. Ct. 262, 41 L. Ed. 648]; Smyth v. Ames, 169 U. S. 466 [18 Sup. Ct. 418, 42 L. Ed. 819]; Ex parte Young, 209 U. S. 123, 159, 160 [28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764]; Ludwig v. Western Union Telegraph Co., 216 U. S. 146 [30 Sup. Ct. 280, 54 L. Ed. 423]; Hernden v. C.. R. I. & P. Ry. Co., 218 U. S. 135, 155 [30 Sup. Ct. 633, 54 L. Ed. 970]; Hopkins v. Clemson College, 221 U. S. 636, 643–645 [31 Sup. Ct. 654, 55 L. Ed. 890, 35 L. R. A. (N. S.) 243]. And it is equally applicable to a federal officer acting in excess of his authority or under an authority not validly conferred. Noble v. Union River Logging Co. R. R., 147 U. S. 165, 171, 172 [13 Sup. Ct. 271, 37 L. Ed. 123]; School of Magnetic Healing v. McAnnulty, 187 U. S. 94 [23 Sup. Ct. 33, 47 L. Ed. 90.]"

We are of the opinion that the matter set forth in the pleas of the county commissioners in insufficient to show that this suit is in effect against the commonwealth of Massachusetts, and is also insufficient to support a claim to immunity from the process of injunction against a threatened infringement of complainant's patent.

The question whether the granting of an injunction against the use of this ventilating apparatus may embarrass the administration of the state's justice by denying ventilation of a court room we regard as a distinct question. A court of equity may consider not only the interests of the parties to litigation, but the interests of third parties and of the public, and will so shape its decrees as to avoid unnecessary injury.

Upon this record it may not be assumed that the use of the complainant's patented apparatus for washing, tempering, and purifying air is essential to the administration of justice at the county courthouse. If by reason of special circumstances it shall appear to be necessary to use it temporarily or even permanently, a decree may doubtless be framed accordingly. Such considerations, however, are now premature, and may await the determination of the merits of the case when if necessary they may be dealt with by the District Court.

The judgment of the Circuit Court is reversed, and the case is remanded to the District Court, with direction to overrule the defendants' pleas, without costs, and for further proceedings consistent with this opinion, and the appellant recovers its costs of appeal.