WENDE v. HORINE.

(Circuit Court of Appeals, Seventh Circuit. January 5, 1915. Rehearing Denied May 25, 1915.)

No. 2067.

PATENTS ⬤➡76—PATENTABILITY—PRIOR USE OR SALE—"ON SALE."

An offer to sell a new device, made to a prospective purchaser after the experimental stage has been passed, the invention reduced to practice, and the apparatus manufactured in its perfected form, is a placing "on sale" within the statute, and a valid patent for the device cannot be granted on an application filed more than two years thereafter.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 92, 98; Dec. Dig. ⬤➡76.

For other definitions, see Words and Phrases, First and Second Series, On Sale.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Christian C. Kohlsaat, Judge.

Suit in equity by Frank J. Wende against Melville F. Horine. Decree for defendant, and complainant appeals. Affirmed.

See, also, 191 Fed. 620.

Charles C. Bulkley and George E. Waldo, both of Chicago, Ill., for appellant.

John L. Jackson, of Chicago, Ill., for appellee.

Before BAKER, SEAMAN, and MACK, Circuit Judges.

MACK, Circuit Judge. Applications for letters patent for improvements in a manifolding apparatus were filed by appellee on July 3, 1897, and by appellant nearly a year and a half later, on December 21, 1898. The specific commercial demand that called forth the efforts of the parties was that of the Union Stock Yards at Chicago for

simultaneous fac simile scale records and certificates by some carbon copy process.

Interference proceedings were instituted between the parties. In support of his claim of priority, Wende relied upon two sets of exhibits. One set, however, was rejected, on the ground that, while it may have had features in common with Horine's exhibit, it did not show one element of the specific claims in issue. Wende's contention for a construction of the claims and the issue broad enough to make the second set of exhibits admissible was rejected. Priority was awarded to Horine on a construction found to have been reduced to practice not later than November 25, 1896. No appeal was taken from the decision of the Commissioner.

Thereupon Horine filed additional and broader claims, omitting therein the one element, the construction of which had caused the rejection of Wende's second set of exhibits, and was awarded a patent covering both the claims involved in the interference and the broader claims. Wende then amended his application, adopted the broader claims in Horine's patent, and succeeded in having a second interference proceeding instituted. Horine's motion to dissolve this proceeding on the ground of estoppel was overruled both by the primary examiner and the Commissioner; the latter, too, reversed the action of the former, who had granted the motion only because in his judgment no prima facie showing of priority had been made by Wende.

In this second interference Wende was successful in the Patent Office in establishing the priority of the second set of exhibits, which had not been received in evidence in the former proceeding, over Horine's original exhibit, on which the latter again relied; but, on appeal, the Court of Appeals for the District of Columbia reversed the Commissioner of Patents, on the ground that the broader claims of the second interference differed from the specific claims of the first interference in scope alone, and not generically, and that therefore the Commissioner's final unappealed decision in the first interference was res adjudicata of the issues involved in the second, and that, notwithstanding the rejection in the first interference proceeding of the second set of exhibits, and irrespective of whether such action was proper or erroneous, the priority, as against Horine, of the conception and reduction to practice therein of the broader claims could not be inquired into.

Wende thereupon filed his bill in equity under section 4915 of the Revised Statutes (Comp. St. 1913, § 9460) to secure a judicial declaration of priority of the claims involved in the second interference proceeding and an adjudication that he is entitled to receive a patent for his invention specified therein. This bill was dismissed in the District Court on the ground of identity of the issues in the two proceedings and estoppel to sue under section 4915, because of a failure to appeal from the decision of the Commissioner in the first interference proceeding.

In addition to res adjudicata and estoppel, several other defenses were made in the District Court, and are urged, on this appeal, in sup-

port of the decree. The conclusion which we have reached, that the invention was on sale more than two years before Wende's application was filed, and that he cannot, therefore, under any circumstances, obtain letters patent thereon, renders it unnecessary for us to express any opinion either on the defenses of res adjudicata and estoppel or on the merits of the respective contentions to priority.

While there is a strong controversy as to the ultimate conclusion, there is practically none as to the evidentiary facts from which it must be determined whether or not Horine's original exhibit, completed not later than November 25, 1896, and concededly embodying the invention covered by the claims now in question, was on sale prior to December 21, 1896. This apparatus, completed and delivered to Horine on November 25, 1896, was not in any sense a mere model or an experimental construction, but, as testified to, it was a "full-sized, complete, operative apparatus." And the demonstrations which he subsequently made were not, as in Elizabeth v. Paving Co., 97 U. S. 126, 24 L. Ed. 1000, for the purpose of experimenting, of determining whether or not it would operate practically and commercially, but solely for the purpose of showing its advantages and selling it to a prospective purchaser. No changes were in fact made in it, and the identical apparatus was subsequently installed and used.

Wende and Horine were making every endeavor to secure the adoption of their respective apparatus by the Union Stock Yards Company. On November 30, 1896, Horine took his perfected apparatus to the office of J. C. Denison, secretary of the Stock Yards Company, with whom both parties had been conferring for months, and to whom each of them had showed his work during the experimental stages, and demonstrated its operation before him and others. On December 12, 1896, Horine appeared at a meeting of the Live Stock Exchange committee with General Manager Sherman and other officials of the Stock Yards Company, to make further demonstrations. The committee then and there recommended its adoption, and Sherman instructed Denison to ascertain the cost of the necessary materials, as well as the compensation to be paid Horine. Denison on the same day requested Horine to submit a written proposition, and on December 16th wrote to him:

"It is now Wednesday afternoon, and the last time I saw you you positively agreed to give me figures as to what you would charge us for your new scale ticket device on Monday."

After telling him of Wende's device, and the effort to secure its adoption, he continues:

"My object is * * * to impress upon you the necessity of being here to-morrow and have the matter amicably settled."

The letter was signed "J. C. Denison, Secretary," and was inclosed in an envelope of "J. C. Denison, Secretary and Treasurer of the Union Stock Yards & Transit Company of Chicago." On December 17, 1896, Horine delivered to Denison a letter addressed to the Stock Yards Company, from which we quote the following passages:

"My proposition hereinafter made is intended to enable your company to use at all your live stock scales my new method of producing simultaneous

scalé records and certificates. * * * Now, all I ask from your company as a reward for my ingenuity and persistence in your behalf and that of the general trade here, as part compensation for my labor, time, and expenses in perfecting the new system and its necessary apparatus, and in preparing the way for its introduction into this market, for my further services in directing and supervising the preparation of the required books and blanks for its practical adoption at all your scales on or about January 1, 1897, including the testing and selection of carbon sheets therefor, and for the use of all necessary mechanical apparatus for the purpose, which I agree to furnish and keep in repair at my own expense, including all necessary instruction to the weighmasters for using the same, * * * is $1,000 per year for three years, beginning January 1, 1897, payable quarterly in advance, with no increase, but a probable decrease, thereafter. This amounts to but a few cents per day for each scale."

In this letter he also pointed out the many advantages of his invention. On December 19th he delivered another letter to Denison, also addressed to the Stock Yards Company, in which he said:

"My proposition to your company under date of December 17, 1896, is intended to and does, but only in general terms, offer to your company, among other considerations, what is herein more specifically set forth, viz.: The right under my first patent already granted (U. S. patent No. 556,009, issued March 10, 1896), and under my forthcoming second patent, to manufacture or have manufactured at your own expense, as proposed by your secretary (but under my personal supervision and direction, as already stated), the necessary books and blanks which I designed and patented, according to the forms described and illustrated in my said first patent and forthcoming second patent, or any modifications of the same which your company may desire; also the further right, under my said U. S. patent No. 556,009 and forthcoming second patent, to use at all your live stock scales in this market all necessary mechanical apparatus of my invention, which I agree to have manufactured and to furnish at my own expense and to keep in repair, a full supply of the same to be provided by me (including a sufficient number of the certificate plates or scale ticket holders complete for each scale, so that no weighmaster need stop during any one day to reload the same with the certificate blanks before the day's business is over), together with the accessories belonging thereto (consisting of a stiletto and appropriate clip and filing board with detachable device for holding a second or reference record for each scale), and all necessary instruction to the weighmasters for using the same. You will therefore attach this letter to the written proposition already delivered you, the same to be read and considered as part of it."

It is clear that Denison, as secretary and treasurer of the Stock Yards Company, was acting for it in this correspondence and in these negotiations, irrespective of whether he had power or was expected to make the final contract. If Horine's letter amounted to an offer to sell the apparatus, then clearly these letters, standing alone, put it "on sale" within the meaning of the statute to the only immediate prospective customer just as effectively as a distributed price list puts an article on sale to the general public.

That Horine, when he delivered the letters of December 17th and 19th, which were clearly in reply to Denison's letter of the 16th, requested the latter to submit them to Mr. Sherman, the general manager; to place them in his hands for consideration, and that Denison, who was friendly to Wende, failed to do this, does not in any way lessen their effect as a placing of the apparatus on sale. Denison was not a mere messenger for Horine; he was the proper recipient on behalf of the Stock Yards of such offers, both because of his posi-

tion and because of the express verbal authority given to him by Sherman on December 12th.

The offer to the Stock Yards Company was complete at the latest when Denison, as secretary, received the letters; the date at which he caused the substance of their contents to be communicated verbally to Sherman is immaterial, and, of course, the delay of over nine months before Horine's proposition, modified in some respects, was finally accepted, can have no bearing on the case.

The statute does not require a "sale," but only a placing "on sale," prior to two years before the application. Under this language a completed sale, either with or without delivery, is not demanded; an offer to sell, made to a prospective purchaser after the experimental stage has been passed, the invention reduced to practice, and the apparatus manufactured in its perfected form, is a placing on sale within the statute. Covert v. Covert (C. C.) 106 Fed. 183; Dittgen v. Racine Co. (C. C.) 181 Fed. 394. We do not share the doubt expressed on this point in McCreery Eng. Co. v. Massachusetts Fan Co., 195 Fed. 498, 502, 115 C. C. A. 408.

Decree affirmed.