CURTISS AEROPLANE & MOTOR CORPORATION et al. v. JANIN et al.

(Circuit Court of Appeals, Second Circuit. December 14, 1921.)

No. 21.

1. **Patents ⬤➪114—Suit in equity to obtain patent.**

In a suit in equity, under Rev. St. § 4915 (Comp. St. § 9460), complainant assumes a heavy burden of proof, and if the facts are seriously in dispute must adduce new and persuasive testimony not submitted to the administrative tribunal.

2. **Patents ⬤➪90(5)—"Reduction to practice."**

The ultimate test of the reduction to practice of an invention is whether the inventor has shown operative means to the man skilled in the art, either by drawings, written or oral description, or by the construction and trial of the thing itself.

3. **Patents ⬤➪90(5)—Application as reduction to practice.**

To constitute a constructive reduction to practice, a patent application must be sufficient to enable a person skilled in the art to construct an operative machine, which will accomplish the intended purpose, without the further exercise of the inventive faculty.

4. **Patents ⬤➪328—Claim 8, of Janin patent, No. 1,312,910, for hydro-aeroplane, awarded to Glenn H. Curtiss.**

The granting to Janin of claim 8 of patent No. 1,312,910, for a hydro-aero machine, *held* erroneous, and the claim adjudged to Glenn H. Curtiss, whose application for a patent for a hydro-aeroplane was in interference, on the ground, not only that Curtiss was first to reduce the invention to practice by actual successful flight in his machine, but also that the application of Janin was not a constructive reduction to practice, because the structure described therein was not operative, and could be made so only by the exercise of invention in the construction of the boat element, described therein only as a "hull-like body."

5. **Words and phrases—"Hydro-aeroplane" defined.**

A "hydro-aeroplane" is a machine that floats on water, rises therefrom to fly, descends again to water, and is capable of indefinitely repeating the operation.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in equity by the Curtiss Aeroplane & Motor Corporation and Glenn H. Curtiss against Albert S. Janin and the Janin Company, Inc. Decree for defendants, and complainants appeal. Reversed.

For opinion below, see 267 Fed. 198.

Suit is brought under Rev. Stat. § 4915 (Comp. St. § 9460), and is in substance a complaint by one inventor (Curtiss) that the Commissioner of Patents has refused to him and granted to another inventor (Janin) a certain "patent on an application," meaning thereby that a claim was, after interference proceedings, awarded to Janin over the objection of Curtiss.

The history of a very prolonged litigation is set forth in the opinion below (267 Fed. 198), and the decision of the Court of Appeals of the District of Columbia, which resulted in the issuance of a patent to Janin containing the claim demanded by Curtiss, is found in Janin v. Curtiss, 45 App. D. C. 362.

Janin's patent, granted August 12, 1919, is No. 1,312,910. The application therefor was filed July 31, 1913, which, however, was "a substitute for an earlier (and abandoned) application filed January 26, 1911." 45 App. D. C. 364. The disclosure of that earlier specification has been held throughout previous litigation to be "Janin's constructive reduction to practice of the inven-

⬤➪For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tion in issue," and it may be summarily stated that he has never made or effected any other reducton to practice.

Curtiss filed his application on August 22, 1911, and therein demanded a patent for "improvement in flying machines." It has (we think) been held throughout the previous litigation that Curtiss reduced his invention to practice by constructing a machine capable of floating on water, rising from the water, flying in the air, and then descending again to the water, and used this machine publicly on January 26, 1911.

The issue in interference became by the above referred to decision of the Court of Appeals the eighth claim of Janin's patent as issued, and is as printed in 267 Fed. at page 208. It is admitted that what the claim calls a hydro-aero machine means the same thing as does hydro-aeroplane, and it is enough, in stating the controversy on this appeal, to say that both Curtiss and Janin claimed to have invented an hydro-aeroplane; that claim 8 describes with accuracy, though in general terms, such hydro-aeroplane; that Janin has hitherto obtained the claim, and Curtiss brings this suit to demand it. The bill was dismissed below, and the Curtiss party appealed.

Frederic P. Fish, of Boston, Mass., and S. Mortimer Ward, Jr., of New York City, for appellants.

Thomas A. Hill, of New York City, for appellees.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] The principal plaintiff herein is a patent seeker, exercising his statutory right of demanding from a court of equity what the regular administrative bureau has refused. Such a party is very properly compelled to assume a heavy burden of evidence. Not only must his case carry thorough conviction by the character and amount of evidence (Morgan v. Daniels, 153 U. S. 120, 14 Sup. Ct. 772, 38 L. Ed. 657), but, if facts are seriously in dispute, he must adduce in his equity suit new and persuasive testimony not submitted to the administrative tribunal (Gold v. Newton, 254 Fed. 824, 166 C. C. A. 270).

Curtiss has sought to meet this burden by new, and, in our opinion, conclusive, evidence as to when he first reduced a hydro-aeroplane to practice by flying in one, and his counsel have not failed to point out that the Patent Office result was reached by a majority only of the District Court of Appeals, reversing the decision of Commissioner Ewing. We think that at the close of testimony in the District Court this case was ready for decision upon a record new in several senses, and, as to the trial court's liberty to reach its own conclusions, closely resembled Laas v. Scott (C. C.) 161 Fed. 122.

All discussion of the matter at bar, or of the previous litigation is unfruitful, until a clear understanding is reached of what each party says he invented, which is the same thing as interpreting the claim in suit. Here we agree with the District Court of Appeals in saying that it "is not a combination claim, calling for elements in combination with a hydro-aeroplane, but for a hydro-aeroplane containing certain elements." .

As was pointed out in Hill v. Wooster, 132 U. S. 693, 10 Sup. Ct. 228, 33 L. Ed. 502, it is the duty of the court, in proceedings under Rev. Stat. § 4915, not only to decide priority as between rival claims to invention, but to ascertain whether the parties or either of them has

made a patentable invention. Each of these parties asserts that he has invented an hydro-aeroplane; they agree that the same claim language defines their several inventions, yet the two hydro-aeroplanes are different; wherefore our next inquiry is: In what do they differ, and why was Janin preferred over Curtiss?

All patentable inventions are defined by claims, but described, explained and disclosed by specification. The element of a hydro-aeroplane, about which this contest rages, is in claim language "a main water-borne central boat structure"; but, as the specifications show, there is a great distinction between Curtiss' "boat structure" and that of Janin, and the vital questions, not only in this equity suit, but ever since interference began in the Office, is whether this obvious distinction entails a legal difference.

[2] The reason hitherto successfully urged, for preferring Janin to Curtiss, is that Janin first "reduced to practice"—a phrase of which the full meaning is also vital. Reduction to practice is not merely a matter of construction, building and trial, but may consist in the disclosure of the idea by any kind of description, pictorial, verbal, or written, which will enable one skilled in the art to make and use that which is disclosed. We think a drawing may possibly be a sufficient reduction to practice, and an experimental machine insufficient, for the question is one of degree, and the ultimate test is always whether the inventor has shown operative means to that theoretically omnipresent person, the man skilled in the art. Macomber, p. 68. But see Automatic, etc., Co. v. Pneumatic, etc., Co., 166 Fed. 288, 92 C. C. A. 206, and McCreery, etc., Co. v. Massachusetts etc., Co., 195 Fed. 498, 115 C. C. A. 408.

Curtiss proved before this suit that he reduced to practice by flying in a hydro-aeroplane on January 26, 1911, at San Diego, Cal.; and we agree with the court below that he has in this suit proved that he did the same thing with the same machine, but for shorter flights, several days earlier—as early as January 24th. In his specification of August 22, 1911, he describes the boat body of this reduction to practice, which was confessedly operative.

Janin's was admittedly a "constructive reduction to practice," consisting of filing his specification on the same January 26; but, as (according to the District Court of Appeals) he had "conceived" his hydro-aeroplane as early as 1907, to him was awarded the invention. Some consideration of these words and phrases seems necessary. We agree with Mr. Macomber (page 785) that—

"The Patent Office rule that the filing of an allowable application is a constructive reduction to practice is only the expression in another form, of the thought that the application for a patent, if it sufficiently describes the invention, is conclusive evidence that the invention was made at least as early as that date."

As for the word "conceived," it means that the inventor "formed a distinct and correct notion of" whatever he thought he invented (Cent. Dict.), and its value in patent causes is fully stated by Lurton, J., in Standard, etc., Co. v. Peters, etc., Co., 77 Fed. 630, 645, 23 C. C. A. 367.

In this case, however, we feel sure that defendant's constructive reduction to practice receives no assistance from any previous conception on his part; and this is true, even if full credence be given to defendant's evidence as to his early drawings, models, and experiments and no weight be attached to plaintiff's testimony tending to show Janin as one unworthy of belief.

[3] The reason for this holding is that whatever Janin conceived prior to January 26, 1911, whatever experiments or models he made, it is admitted that the ripe fruit of all that he had done was contained in the specification he then filed. Let it be admitted that defendant had many and early conceptions of invention; they all related to a hydro-aeroplane, and he disclosed everything that he had conceived in his original specification. If, therefore, that specification does not enable the man skilled in the art to construct without further exercise of the inventive faculty an operative hydro-aeroplane, there has been no reduction to practice, constructive or otherwise. Standard, etc., Co. v. Peters, etc., Co., supra. Indeed, the whole doctrine of conception, as differing from reduction to practice, is excellently set forth in Christie v. Seybold, 55 Fed. 69, 76, 5 C. C. A. 33, 40, by the present Chief Justice when Circuit Judge, in saying that he who—

"first conceives, and in a mental sense first invents, a machine, art, or composition of matter, may date his patentable invention back to the time of its conception, if he connects the conception with its reduction to practice by reasonable diligence on his part, so that they are substantially one continuous act."

Therefore, if it be admitted that defendant Janin had for years been conceiving hydro-aeroplanes, the question remains whether the device he disclosed on January 26, 1911, was something that would or could rise out of the water and fly; for we again agree with the District Court of Appeals in holding that—

"The law is well settled that where an invention is designed to perform a definite purpose, a construction embodying it must be capable, when operated, of performing that purpose."

[4, 5] Thus the fundamental inquiry is this: Did Janin on January 26, 1911, and by filing his specification disclose an operative hydro-aeroplane? It is imperative to answer this question, for the subject matter of the claim in suit is a hydro-acroplane; that word means a machine that floats on water, rises therefrom to fly, descends again to water, and is capable of indefinitely repeating the operation. It makes no difference (as seems to have been thought by the court below) that the first hydro-aeroplane could not perhaps do these things from rough water, or unless in charge of a man of exceptional skill; if it would work at all according to the disclosed law of its being, on the smoothest water and in calmest air, it would have been operative, under familiar rules.

Janin disclosed no boat body; by his own evidence he never conceived a boat body, other than one like that of a swift small vessel (e. g. a torpedo boat). He speaks, even in his 1913 specification, only of a "hull-like body," and his drawings only reveal the freeboard of something long and narrow of historic boat shape. Whatever may have

been the probative result of the interference evidence, this record makes it very plain that such a body could never be lifted from the water by any power compatible with flying and placed in a flying machine. That was proved by Curtiss' efforts with his canoe body in 1910.

We agree with the lower court in finding in substance, that any body even suggested by Janin could not be lifted from the water; we do not agree that there is any evidence of his even thinking of using hydroplaning surfaces to lift the "hull-like body," other than the stabilizing floats to port and starboard which are common to both parties. Nor can we agree with the reasons finally assigned in the District Court for still preferring Janin, viz.: (1) If a hydroplaning bottom be given Janin's boat, it would be a hydro-aeroplane, and there were such bottoms known to the art; (2) Janin had the right to "presuppose" or "assume" a proper boat structure. Both these reasons are insufficient, because they necessarily hold that the proper hydroplaning bottom, or the "assumed" boat, would and could be supplied by the man skilled in the art without the exercise of the inventive faculty.

There was no living man skilled in the art of hydro-aeroplaning, because (on this record) no one had ever flown from water, except Fabre, and he could only return by breaking his machine; and hydroplaning did not teach hydro-aeroplaning. Men knew how to skim over water, but (as is sufficiently shown by the fact-findings below) it required much inventive skill to enable the hydroplane bottom to leave the water, and take "the last step that counts," or to introduce into a long boat the "break" subsequently utilized.

Decision, both in the District Court of Appeals and the lower court, has rested on Janin's "unchallenged reduction to practice of January 26, 1911." It seems to have gone unchallenged in the interference, argument was rested on Curtiss' earlier achievements in 1910; in this case it is successfully challenged, and we find that Janin reduced nothing to practice, because what he conceived and disclosed is, as an hydro-aeroplane, wholly inoperative, for it cannot get out of the water; the rest is immaterial.

Decision is grounded on this point, though we may say, further, that in view of the proven unreliability of Janin and his witnesses, we think no reduction or conception can be assigned him earlier than January 26, 1911, in which case Curtiss antedated him by at least two days.

Decree reversed, and cause remanded, with direction to grant the prayer of the bill. Under the statute, there are no costs; mandate to issue forthwith.