## DOVAN CHEMICAL CORPORATION v. CORONA CORD TIRE CO.

(District Court. W. D. Pennsylvania. Feb. 3, 1926.)

### No. 1109.

1. **Patents ⬯328—1,411,231, for vulcanization accelerator, held invalid.**

Weiss patent, No. 1,411,231, for vulcanization accelerator, *held* invalid, on the ground that patentee was not the inventor or discoverer of the efficacy of D P G as an accelerator.

2. **Patents ⬯51(1)—Actual disclosure may be by lecture and publication in trade paper.**

Actual disclosure of one's discovery of the chemical qualities of an article relative to right of another to patent therefor may be by other method than by actual manufacture or application for patent, as by reading paper before convention and printing it in trade journal of chemists.

3. **Patents ⬯82—Abandonment not to be based on nonuse because of excessive cost.**

Abandonment cannot be based on the fact that no commercial use followed discovery and disclosure of chemical value of an article, where this was merely because no method was known for its cheap manufacture.

4. **Patents ⬯90(5)—Patentee of cheap method of manufacture of known article not entitled to monopoly in use of article.**

Patent for cheap method of manufacture of article, thus making possible its commercial use, does not entitle patentee to monopoly in the use of the article, whose qualities had previously been discovered and disclosed by another.

In Equity. Suit by the Dovan Chemical Corporation against the Corona Cord Tire Company. Decree for defendant.

Bakewell, Byrnes & Stebbins, of Pittsburgh, Pa., and James J. Kennedy and Julian S. Wooster, both of New York City, for plaintiff.

Winter, Brown & Critchlow, of Pittsburgh, Pa., and Pennie, Davis, Marvin & Edmonds, Frank E. Barrows, and Raymond F. Adams, all of New York City, for defendant.

GIBSON, District Judge. The plaintiff, Dovan Chemical Corporation, assignee of Morris L. Weiss, has brought its action against the defendant, Corona Cord Tire Company, for alleged infringement of Weiss patent, No. 1,411,231 for a vulcanization accelerator. The application was filed November 12, 1921, and the patent was granted March 28, 1922. The plaintiff prays the ordinary injunction, the delivery to the plaintiff, or destruction of di-substituted guanidines (and particularly diphenylguanidine) which defendant may have, and an accounting.

Crude rubber, as such, is of little value. When mixed with sulphur and other materials, and subjected to heat, it becomes the rubber of commerce. This mixture and application of heat is termed vulcanization, and a "vulcanization accelerator" is a material added to the mixture which not only hastens vulcanization (as its name indicates), but also increases the elasticity and otherwise improves the quality of the rubber article being manufactured. By the patent in suit monopoly in the use of diphenylguanidine and di-substituted guanidines, as such accelerators, is claimed.

The defendant, by stipulation, has admitted the purchase of diphenylguanidine and use of it in the proportion of two-thirds of 1 per cent. of the rubber as an accelerator of vulcanization, but has denied the validity of the patent. It alleges that one Dr. G. D. Kratz, on September 6, 1919, more than two years before the application for the patent in suit, disclosed the subject-matter of the patent in a paper read at a convention of chemists engaged in the rubber industry held at Philadelphia, which paper was printed in the Journal of Industrial and Engineering Chemistry in April, 1920, and that thus the full information of the patent was anticipated. It further declares that Kratz was the discoverer of diphenylguanidine as a vulcanizer accelerator, not Weiss; that tubes made in 1917 by Kratz from a rubber mixture, with that accelerator, were sold; that Weiss was not an originator of the idea of the use of diphenylguanidine as an accelerator, having obtained it from one Baldwin, who had experimented therewith; and, finally, that the

patent does not disclose a patentable invention.

Plaintiff has particularly relied upon claims 5, 8, 9, and 12 of the patent, which follow:

"5. The process of treating rubber or similar materials which comprises combining with the rubber compound a vulcanizing agent and a di-substituted guanidine accelerator. * * *

"8. The process of treating rubber or similar materials, which comprises combining with the rubber compound a vulcanizing agent and diphenylguanidine. * * *

"9. A vulcanizing compound of rubber or similar material combined with a vulcanizing agent and a di-substituted guanidine. * * *

"12. A vulcanized compound of rubber or similar material combined with a vulcanizing agent and diphenylguanidine."

In view of the stipulated use of diphenylguanidine by the defendant, our inquiry in the instant matter is properly confined to a determination of the validity or invalidity of the eighth and twelfth claims.

In discussing them, monophenylguanidine will be abbreviated to M P G, diphenylguanidine to D P G and triphenylguanidine to T P G.

It has been argued by counsel for defendant, and with considerable force, that, no matter who introduced the use of D P G as an accelerator, no patent for such use was an actual invention, or displayed the inventive faculty, when application was made as late as November 12, 1921. The contention is, in substance, that for at least six years prior thereto rubber chemists had accepted the fact that vulcanization accelerators were nitrogen-containing substances capable of certain reactions in the presence of sulphur. Among the substances known to meet the general chemical requirements of accelerators in this respect were the guanidines, which included M P G, D P G and T P G. T P G was known to be an accelerator, and was in use as such before the patentee, Morris L. Weiss, began his career as a rubber chemist; and prior to its use the possibility of the guanidines as accelerators had been suggested in magazine articles. D P G is closely related to T P G in chemical construction, and, when it was established that the latter was an accelerator of value, it followed as a matter of natural presumption that D P G was also an accelerator. To determine the correctness of this presumption, and the value of the substance, and the best way to use it, the rubber chemist was required, it is claimed, to exercise no

inventive faculty, but mere industry in making tests and the ordinary knowledge of his profession. With the knowledge of the fact that one member of a closely related group was an accelerator, the qualities of another member offered no greater problem to the chemist, except in time of solution, than would be offered to a pipe fitter altering the plumbing in a building. Each would be required to use only the ordinary tools of his trade; the one his ability to prepare and treat a rubber composition, the other his wrench and mechanical ability.

[1] While the contention just stated might require careful consideration under some circumstances, we have not based our decision upon it, but have come to the conclusion upon other grounds that the patent in suit is invalid. The testimony, in our judgment, conclusively establishes the fact that Morris L. Weiss was not the inventor or discoverer of the efficacy of D P G as a vulcanization accelerator—the only actual disclosure of the patent.

It is manifestly impossible that a synopsis of the testimony be here given. Certain admitted facts, as well as disputed testimony, tend strongly to sustain the finding. Morris L. Weiss, having just received a degree in chemistry from Cooper Union, of New York City, late in 1917, entered the employ of the Republic Rubber Company, of Youngstown, Ohio. That company was engaged in the manufacture of rubber articles largely made from "shoddy," or reclaimed rubber. Like most other rubber manufacturers, in 1918-19 it was interested in obtaining other and improved accelerators, but was specially interested in T P G, and was engaged in building a plant for its commercial use. Weiss, in addition to his usual work, was engaged in experiments upon accelerators, among them T P G. He was required by the rules of the company to enter all his experiments in a book, called the "X book" kept for the purpose. During the term of Weiss' employment, prior to September 7, 1919, this "X book" shows two experiments with D P G as an accelerator, which are undisputed, and a third which shows a change of its original date, and which defendant claims was subsequent to that date. The undisputed tests were with a "shoddy" mixture, and show no marked superiority of D P G over T P G. The disputed test was not with the shoddy stock of the company, and showed a considerable and marked superiority. On September 6, 1919, one Dr. G. D. Kratz, with a chemistry degree from Cornell University,

read a paper upon accelerators before the American Chemical Society at Philadelphia. In it he fully disclosed the subject-matter of the Weiss patent, more fully, indeed, than does the patent. Inter alia, he placed a table upon a blackboard, giving the comparative powers of D P G, T P G, and other accelerators; aniline being the basis of the comparison. The immediate superior of Weiss in the Republic Rubber Company, M. H. Daniels, was present when this paper was read, and copied the tables placed upon the blackboard, and this information was imparted to Weiss upon the following day. After this date the "X book" shows the use of D P G in a number of tests. In March, 1920, Weiss was discharged by the Republic Rubber Company, and very shortly thereafter applied for employment to two other rubber manufacturers. In both his written applications he referred to the paper read by Dr. Kratz as showing the value of D P G as an accelerator, and stated that he had devised a method of manufacturing that substance cheaply; but in neither did he claim to have been the original discoverer of it as an accelerator. Later in 1920, Weiss, with others, organized the plaintiff company. On July 2, 1921, Weiss made application for a patent to cover his method of preparation of D P G, and received it on July 11, 1922. As stated, the application for the present patent was filed November 12, 1921, and the patent issued March 28, 1922. The patent examiner cited Dr. Kratz's paper before the Chemical Society, published in a magazine in April of 1920, as an anticipation of the patent. Upon affidavits being furnished by Weiss to sustain a claim that he had discovered the qualities of D P G as an accelerator prior to the Kratz paper, the patent eventually was issued. The proceeding in the Patent Office was entirely ex parte, and no testimony was introduced to show any discovery by Kratz prior to the reading of his paper. It will be noted, also, that the patentee accepted the Kratz paper as a disclosure of the invention claimed in his patent, and sought to show the priority of his own discovery, while in the instant case the plaintiff questions the sufficiency of the paper as a disclosure.

The patentee, Weiss, has testified that he began to investigate D P G early in 1918, and made a number of tests with it prior to February of 1919. Despite the rule that all tests should be recorded in the "X book," no test of D P G appears therein prior to February, 1919, except one by Weiss' predecessor, Baldwin, in 1917. Three tests appear

under dates of the early part of the year 1919. Of these, two are in connection with shoddy compounds, and were of little significance. The other now appears of the date "2—10—19." A casual examination discloses that the month has been changed, and an examination under a strong glass plainly shows that the "2" was originally "9," thus making the original date September 10, 1919, three days after Kratz's table of accelerators had been given to Weiss. This test was with new rubber, and not with shoddy, the ordinary stock of the plant. This has some slight significance in itself. Weiss in his testimony refers to this test as the first successful experiment with D P G.

After the meeting of the Chemical Society and the reading of the Kratz paper, a number of tests appear. Some of them are undated, it is true, and Weiss claims they were made in the summer of 1919. Since they follow tests dated in October of 1919, and precede other tests dated in October, November, and December, it is impossible to accept his testimony in this respect.

The testimony of Weiss has been supported by other witnesses in the plant. Their testimony is intended to establish completion of the discovery of D P G prior to Dr. Kratz's paper on September 6, 1919. Chief of these witnesses was M. H. Daniels, the immediate superior of Weiss in the Republic Rubber Company. He has testified that Weiss discussed D P G with him early in 1918, and that he had knowledge that thereafter tests were being made of the substance. His exact knowledge of the progress of this investigation at any particular stage is by no means made plain by his testimony. Daniels attended the Chemical Society meeting at which the Kratz paper was read. Upon his return he delivered his notes of the Kratz paper to Weiss, and now alleges that he told Weiss that the paper confirmed their own findings as to D P G. But the exact nature of these findings does not clearly appear. That a complete discovery of the qualities of D P G had then been made seems impossible under the surrounding circumstances. The test book actuallly showed only two inconclusive tests by Weiss. The company during 1919 was mainly interested in T P G as an accelerator, and was constructing a plant to manufacture it commercially, and it was investigating T P G as late as December 1, 1919, when Daniels wrote to one Stevens, a chemist of the company, that he (Stevens) was spending "too much time on triphenyl. * * * Diphenyl is king pin now." The tests of D P G, subsequent to

Kratz's paper, which were recorded, were quite numerous; but, even so, the results were never imparted to the superior officer of Daniels, according to his testimony. Daniels has stated that he did impart information of the investigation to Mr. Clark in the summer of 1919, but that he also said: "I wasn't prepared to say how good it was." Still more convincing of the unreliability of the claim of complete discovery prior to September 6, 1919, is the admitted fact that the Republic Rubber Company never used D P G in the manufacture of any goods prior to the departure of Weiss on March 1, 1920. If a complete discovery of the powers of D P G had been made by Weiss, and was known to Daniels, it is almost inconceivable that not one trial of it should be made in actual manufacture.

In addition to these sidelights on the testimony of Weiss and his supporting witness, Daniels, the testimony discloses certain other matters that materially affect the weight of their testimony. Despite the fact that the Republic Rubber Company never used D P G in making any articles, Daniels, in support of the patent application, made an affidavit wherein he stated:

"These tests were also carried out in the compounding laboratory for the various departments of the Republic Rubber Company at Youngstown, Ohio, and the accelerator proved to be highly efficient as an accelerator in the actual vulcanization of rubber goods, such as hose, tires, belts, valves and other mechanical goods."

The manifest effect of the immediately foregoing was, at best, to create a false impression. In the same affidavit a certain undated memorandum of test (copy attached to affidavit) was alleged to have been made "early in the year 1919." Daniels, in the instant case, said the entry was made late in the year 1919 or early in the year 1920. The context plainly shows the entry was not made early in 1919. This was a vital matter before the Patent Examiner, and, whether such inaccuracies of statement are the result of carelessness or otherwise, the effect of them is to seriously affect the credit to be given the whole testimony.

Weiss' testimony in the instant case shows various contradictions of statements made in prior steps in the case, some in regard to material matters. Mere variation in recollection at different times is not always vital; but, when by means of the variations the testimony becomes more favorable to the contentions of the witness with each successive delivery, the court is required to scrutinize it with some care.

Certain other witnesses have been produced on behalf of the plaintiff. They were employees within the plant of the Republic Rubber Company, connected with the chemists only in the handling of tests. Having kept no records, and being unacquainted with the accelerator in the mix handled, it is not probable they would remember exact dates at the end of seven years. We feel that the circumstances, as well as our observation of the witnesses, preclude us from giving great weight in the attempt to fix Weiss' discovery of D P G as prior to Kratz's disclosure.

The credible testimony shows that prior to September 7, 1919, the patentee, Weiss, made several tests with D P G; but those tests were so few in number and so inconclusive in results that no legitimate claim can be made to a knowledge of the superiority of D P G over T P G as an accelerator. We find as a fact, therefore, that Morris L. Weiss did not independently discover the efficacy of D P G as an accelerator of vulcanization prior to the delivery of the Kratz paper on September 6, 1919. But, even had our finding in this respect been otherwise, the testimony discloses that not only had another disclosed the subject-matter of the patent to the world in advance of the patentee, but that other had also discovered the qualities of, and had used, D P G several years prior to the time claimed by the patentee as marking the beginning of his investigations.

In 1916 G. D. Kratz was a research chemist for the Norwalk Tire & Rubber Company. He had a degree in chemistry from Cornell University, and had been a rubber chemist for four years in 1916. In that year he prepared a quantity of D P G, and established its efficacy as an accelerator by a number of tests. His investigation included a number of other accelerators, and a table was prepared by him which showed the comparative powers of the accelerators investigated. In this respect his accomplishment was greater than that claimed by the patentee. While Kratz was engaged in this labor, his associates, Drs. Russell and Spence, were in touch with his work. They have testified to that labor and its results. As further confirmation a copy of Kratz's report to the Norwalk Company has been offered. In 1917 Kratz became chief chemist of the Falls Rubber Company. In 1917, he has testified, he used D P G in the manufacture of 300 tires, part of a consignment of 1,000 tires sold. In 1918 Kratz repeated his tests of the various ac-

celerators tested in 1916 at Norwalk. His reason for so doing was his desire to verify the previous results in a rubber compound which did not contain zinc oxide; that material having been a part of the compound when the 1916 tests were made. These tests, with other labor necessary, furnished the foundation facts of the paper read September 6, 1919, and published in April of 1920.

It has been urged by counsel for the plaintiff that the testimony of Kratz as to the actual use of D P G in the manufacture of tires should be ignored, because uncorroborated, and points to the ignorance of subordinate employees of the Falls Rubber Company. There is some documentary evidence which tends to confirm this claim of use, but, even if there were none, we should not feel justified in rejecting it. To do so would be to impute willful falsehood to Dr. Kratz, and neither his interest in this case nor his manner and appearance upon the stand was such as to furnish any foundation for that imputation. His knowledge of D P G and the general circumstances make the use of it as an accelerator quite probable.

[2-4] It is further argued that Kratz's early investigations and discoveries were nothing more than abandoned experiments. The foundation of this claim seems to be based upon the misapprehension that no use of the idea other than actual manufacture or an application for a patent is an actual disclosure of it to the world and a reduction to practice. As a matter of fact, the method of disclosure adopted by Kratz called the attention of rubber manufacturers to the discovery far more effectively than would have a patent application quietly filed in the Patent Office. As to what constitutes reduction to practice, see Curtiss v. Janin (C. C. A.) 278 F. 454. Nor is the claim of abandonment to be established by pointing to the fact that no use of D P G followed Dr. Kratz's disclosure. In making use of such an argument, counsel for plaintiff is attempting to bring the subject-matter of this patent, to which plaintiff is not entitled, within the scope of another patent which does belong to it so far as the evidence of this case discloses. D P G was not used by rubber manufacturers after the Kratz disclosure, not because its efficacy was unknown or doubted, but because no method was known for its cheap manufacture. Weiss devised a method which made possible its commercial use, and, so far as appears, accomplished something of great value. He filed an application for a patent upon this method some five months prior to his application for the patent in the instant case, and eventually was granted it. But disclosure of a method of cheap manufacture does not entitle a patentee to claim a monopoly in the use of an article those qualities were disclosed by another. Commercial use is one thing, discovery another, although, it is true, such use may, under certain circumstances, throw light upon the novelty claimed for a patented device. Those reasons do not exist here, where the reason for nonuse prior to plaintiff's method patent fully appears.

In reaching our conclusion that Morris L. Weiss was not the actual and independent inventor and discoverer of D P G as an accelerator, we have endeavored to consider the questions involved without being unduly affected by the action of other courts in litigation upon the patent in suit; and, owing to the difference in opinion in such courts, we trust we have been able to do so.

Let a decree be drawn in accordance with the finding of above opinion.