### Butler and others *v.* Shaw.

*(Circuit Court, D. Massachusetts. August 20, 1884.)*

1. **PATENTS FOR INVENTIONS — INTERFERENCE PROCEEDINGS — DECISION OF COMMISSIONER OF PATENTS — HOW REVIEWED — REV. ST. § 4915.**

   From a decision of the commissioner of patents upon an interference no appeal lies to the supreme court of the District of Columbia, and the only remedy is by a bill in equity in the United States circuit court, under Rev. St. § 4915, to review the proceedings in the patent-office.

2. **SAME — COSTS.**

   The last clause of section 4915 of the Revised Statutes, requiring the applicant to pay all the expenses of the proceeding, whether the final decision is in his favor or not, is limited to cases in which there is no opposing party other than the commissioner of patents, and whenever there are opposing parties, as in a contested case of interference, the ordinary rule should be followed, and costs be awarded to the party prevailing.

3. **SAME — BUTLER IMPROVED MILK-CAN — ANTICIPATION — SHAW CAN.**

   The first claim of the patent applied for by Francis G. Butler, on November 20, 1878, for an improved milk-can, *held* not anticipated by the original patent granted to Philander Shaw, on September 10, 1878, for an improvement in milk-cans, and that while Butler was not entitled to a patent on his third claim, he was entitled to a patent for the invention specified in his first claim, and to the costs of this suit.

In Equity.

*W. E. Simonds*, for complainants.

*J. J. Coombs*, for defendant.

Before GRAY and NELSON, JJ.

GRAY, Justice. This is a bill in equity under section 4915 of the Revised Statutes, filed in this court on August 16, 1882, by Francis G. Butler, a citizen of Connecticut, and the Vermont Farm Machine

Company, a Vermont corporation, as his assignee, against Betsey H. Shaw, a citizen of Massachusetts, assignee of Philander Shaw, to obtain an adjudication that Butler is entitled to a patent for improvements in milk-cans, which has been refused him by the commissioner of patents, upon an interference declared between him and the defendant.

The case cannot be well understood without an abstract of the proceedings in the patent-office, copies of which have been submitted to us, and which were in substance as follows:

On September 10, 1878, a patent was issued to Philander Shaw, on an application filed by him on February 4, 1878. The apparatus described in the specification of that patent was as follows:

"A milk can, a, is closed at the top by a hollow float, and has at the upper end of the side a transparent pane of glass, through which the formation of the cream and its depth can readily be ascertained. The milk-can, after being filled with milk, is placed in a water-jacket, i, surrounded on its sides and bottom with a hollow closed receptacle, l, into which steam and cold water are alternately introduced; the steam, at the side of the receptacle, by a pipe leading from an ordinary heater, m, so as to raise the temperature of the milk to about 130 deg. Fahrenheit, at which temperature cream is most rapidly separated; and the cold water at the bottom of the receptacle, by the force of gravity, through a delivery pipe from an ordinary water-cooler, p, so as to cool the milk gradually from below, prevent downward currents in the milk, and thus form cream more quickly and in greater proportion than in ordinary open cans. Within the can is a tube, d, rising to about two-thirds of the height of the can, and the lower end of which projects through the side of the can near the bottom, and is there provided with a suitable stopcock. Closely fitted into the upper end of this tube is another tube, f, open at both ends, which can be adjusted up and down, so as to draw off the cream at the level of its junction with the milk, and which has attached to its upper end a graduated scale, g, and an indicator, h, opposite the glass pane, so as to show the depth of the cream, and how much is drawn off."

The claims in that specification were as follows:

"(1) The herein described apparatus for obtaining cream from milk, consisting of the milk-can, a, the water-jacket, i, the closed receptacle, l, the heater, m, and the cooler, p, as set forth.

"(2) The herein described milk-can, a, for raising cream, in combination with the telescopic tubes, d, f, the graduated scale, g, and the indicator, h, as and for the purpose set forth."

On November 20, 1878, Butler filed an application for a patent, in which, as afterwards amended to meet objections of the examiners, he described a milk vessel, with a pane of glass near the top of sufficient length, vertically, to show the height of the cream raised upon the milk; and with an outlet at the bottom opening into a discharging tube or faucet, turning on a center pin or arbor, and adjustable so as to bring its discharging mouth at a height above the bottom of the can, equal to the depth of the layer of cream, and automatically discharge all the milk, leaving the cream in the can; and made two claims, the second of which is not now insisted on, and requires no further mention, and the first of which was as follows:

"(1) A milk vessel, having an adjustable faucet that can be set to automatically discharge any predetermined quantity of milk, to leave in the vessel a certain quantity of cream, and provided with a glass pane to ascertain the degree or place of adjustment of the faucet."

On April 12, 1879, the examiner rejected this first claim in Butler's application, on the ground that its subject-matter had been anticipated by the patent already granted to Shaw. Butler thereupon asked that an interference might be declared between his application and that patent. An interference was declared between Butler's first claim and Shaw's patent upon this claim or issue:

"A can for milk and cream separation, having an adjustable automatic discharge faucet, and a transparent pane by which the place or degree of faucet adjustment may be determined."

In the interference proceedings, Butler stated that in November, 1876, he conceived and practically tested the invention of such a can as described in this issue. Shaw stated that in March, 1876, he embodied his invention in a model; and on April 5, 1880, (Shaw having died in September, 1879,) Mrs. Shaw, at the suggestion of the examiner, filed an application for a reissue, repeating the description and the claims of Shaw's original patent, and inserting a new claim in the words of this issue.

The examiner of interferences decided that Shaw was the prior inventor. On appeal by Butler from that decision to the board of examiners in chief, one of them was in favor of affirming it. But the majority of the board held that the reissue application had materially enlarged the scope of Shaw's claim, and had brought in objectionable new matter to make a conflict, when none existed in fact, between the two devices; that Shaw's other claims covered his real invention and all that he was entitled to; that Butler's first claim was limited to the device which he had invented, and in no way trenched upon the invention of Shaw; that Shaw's device was for separating cream from milk, by drawing off the cream from the top of the milk, leaving the milk in the can, and could not be used to draw off the milk and leave the cream; and Butler's device was for separating milk from cream, by drawing off the milk at the bottom, leaving the cream in the can, and could not be used to draw off the cream and leave the milk; that the two devices were mechanically different, having no feature in common, except the glass panes and the indicators, which were well known, and not patentable by either; that an interference had been declared, and the parties had been contending, on a matter which one had not claimed and which neither was entitled to; and therefore recommended that the interference be dissolved and the case be remanded to the primary examiner, with instructions to reject Shaw's new claim and allow the parties to take patents on their other claims, unless some good reason could be shown for rejection on further examination.

From the decision of the board of examiners Mrs. Shaw appealed

to the commissioner of patents in person, who, on September 2, 1881, made the following decision:

"The claim at issue between the parties to this controversy reads as follows: 'A can for milk and cream separation, having an adjustable automatic discharge faucet, and a transparent pane by which the place [or degree] of faucet adjustment may be determined.' Priority of invention is the only question to be determined. While it is true that the devices of the respective parties are different, in principle they are the same, and both are within the terms of the issue. The evidence shows that Shaw completed a model of his invention in March, 1876. Whether the date written upon the model is the correct one or not, is immaterial in this case, as it clearly appears that sometime during that month the model was completed. Butler claims to have conceived his invention in November, 1876. He reduced it to practice in January or February following. I find nothing in the testimony showing an abandonment of invention on the part of Shaw; and as the dates above mentioned show that he was the prior inventor, I affirm the decision of the board of examiners in chief, awarding him priority of invention."

From the terms of that decision, it would appear that the learned commissioner wholly overlooked the decision of the majority of the board of examiners in chief, and the fact that Mrs. Shaw alone had appealed from that decision, and treated the case as if the decision of the dissenting examiner had been the decision of the board, and as if Butler had been the appellant.

Pursuant to that decision of the commissioner of patents, a reissue was granted on October 18, 1881, to Mrs. Shaw, containing the new claim.

On September 27, 1881, the primary examiner took up Butler's original application, and decided that, in view of the adverse decision in the interference, his first claim should be erased. On October 3d, Butler requested a reconsideration of that claim, and also amended his application by adding a third claim in the words of the declaration of interference. On October 14th, the examiner decided that Butler could not be allowed this claim, because it was the subject-matter of the interference finally decided against him. On October 28th, Butler requested a reconsideration of the rejection of his first and third claims, and on November 2d the examiner again rejected both of them. On December 2d, Butler appealed from this decision to the board of examiners in chief, who, after pointing out that their former decision on the interference did not award priority to Shaw, as the commissioner of patents had assumed, and expressing an opinion that the reissue of Shaw's patent, when construed in the light of his specification, drawing, and model, would not preclude Butler from being allowed his first claim, concluded thus:

"Yet the former examiner having held that the old patent of Shaw authorized the making of the above third claim, and that said third claim covered the matter of the first claim, and the commissioner having virtually decided priority in favor of Shaw, we will *pro forma* affirm the action of the examiner now in charge, and let the matter go before the commissioner for disentanglement and adjudication."

From this decision of the board of examiners Butler appealed to the commissioner of patents in person; and on December 28, 1881, the acting commissioner affirmed the decision, for these reasons:

"In their decision in the interference proceeding, the board of examiners in chief made substantially the same suggestion with reference to certain differences existing between Butler and Shaw, which they now make in the *ex parte* proceeding. These differences were recognized by the commissioner, but it was finally held, after careful consideration, that, notwithstanding these differences, the claims of the parties, as therein presented, were substantially identical. The first claim now appealed is the claim that was involved in the interference referred to, and the third claim is drawn up in the very language of the issue in that case. The questions presented by these claims are therefore *res adjudicata,* and clearly cannot be reopened in an *ex parte* proceeding upon the suggestion of the defeated party. The applicant must therefore be finally rejected, upon reference to the adjudication in the interference case of *Butler* v. *Shaw.*"

The defendant has introduced in evidence a patent issued to Butler on January 31, 1882, on another application filed by him on November 8, 1881, the specification of which described the apparatus as in his first application, and the claim in which was as follows:

"The within described method of separating cream from the milk from or upon which it shall have been raised, which consists in first ascertaining, as set forth, the quantity or depth of cream raised in the vessel, and then adjusting a discharge faucet to the desired point and withdrawing the milk from beneath the cream, leaving such predetermined quantity of cream within the vessel."

No copies of the proceedings in the patent-office upon that application having been submitted to us, we are not informed of the grounds upon which Butler was granted a patent for the method, while he was refused a patent for the machine in which the method was embodied.

At the argument before this court, the defendant contended that Shaw was rightly awarded priority of invention upon the claim stated in the declaration of interference; that if Shaw was not entitled to that claim, Butler was not; that if Butler was entitled to his first claim, he had mistaken his remedy, by filing a bill in equity in this court to review the decision of the commissioner of patents upon the interference, instead of appealing to the supreme court of the District of Columbia from the final rejection of this claim by the acting commissioner; and that he was precluded from now asserting this claim by having taken out the patent of January 31, 1882.

The proofs before us clearly show that Butler was the first inventor of the device described in his first claim for drawing off the milk, leaving the cream in the can; that Shaw's invention was limited to the device which he described for drawing off the cream, leaving the milk; that the two inventions differed in mechanical construction and in practical operation; and that neither was broad enough to include both.

It follows that the proceedings in the patent-office were erroneous in the following particulars: (1) The decision of the examiner, on April 12, 1879, rejecting the first claim in Butler's application, on the ground that its subject-matter had been anticipated by Shaw's original patent. (2) The declaration of interference between Butler and Shaw on an issue broader than either had theretofore pretended to claim, or was entitled to. (3) The final decree of the commissioner of patents, on September 2, 1881, in the interference, awarding priority of invention to Shaw upon that issue. (4) The reissue of Shaw's patent with a corresponding claim.

But after the decision of the commissioner of patents in favor of Shaw upon the broad claim stated in the declaration of interference, and the reissue of Shaw's patent with that claim inserted accordingly, the commissioner of patents had no authority to revise that decision, or to revoke the reissue. Butler's remedy was by resort to the courts.

That decision of the commissioner of patents, so long as it stood, if it did not (as the acting commissioner afterwards held that it did) operate as an adjudication precluding Butler from being allowed his first claim, yet would, so far as the action of the patent-office had any effect, make a patent, if afterwards granted to him for that claim, subordinate to the broader claim so allowed to Shaw.

An appeal by Butler to the supreme court of the District of Columbia from the later decision of the acting commissioner, on December 28, 1881, rejecting his application, would not, therefore, afford him an adequate remedy. In order to obtain complete relief, he must have the decision of the commissioner of patents upon the interference reviewed; and that can only be done by bill in equity in a circuit court of the United States. From the decision of the comissioner of patents upon an interference, no appeal lies to the supreme court of the District of Columbia, and the only remedy is by bill in equity. It is only in other cases of rejection by the commissioner of an application for a patent, that an appeal may, perhaps must, be taken to the supreme court of the District of Columbia, and be decided by that court against the applicant, before he may file a bill in equity. Rev. St. §§ 629, 711, 4911, 4915.

When an applicant for a patent appeals from the rejection of his application by the commissioner of patents to the supreme court of the District of Columbia, that court acts strictly as a court of appeal in the matter of granting patents; the commissioner of patents is the appellee, and notice to parties interested is given through him; the hearing is summary, and is confined to the specific reasons of appeal, and to the evidence produced before the commissioner; and it is expressly provided that "no opinion or decision of the court in any such case shall prevent any person interested from the right to contest the validity of such patent in any court wherein the same may be called in question." Id. §§ 4913, 4914. But a bill in equity in a circuit court of the United States, under section 4915,

by a party against whom an interference has been decided by the commissioner of patents, is a suit within the ordinary jurisdiction in equity of the courts of the United States; the court itself gives notice to adverse parties; the statute contains no provision requiring the case to be heard upon the evidence produced before the commissioner, or restricting the effect of the decree; and, as has been held in this and other circuits, the court may receive new evidence, and has the same powers as in other cases in equity. *Whipple* v. *Miner*, 15 Fed. Rep. 117, before Lowell, J.; *Ex parte Squire*, 3 Ban. & A. 133, before Treat, J., and *Atkinson* v. *Boardman*, before Mr. Justice Nelson, there cited. Doubtless, upon general principles, and in accordance with the rule expressly declared in section 4918 in the case of a similar bill between parties interested in interfering patents, the judgment cannot affect the right of any person except the parties to the suit, and those subsequently deriving title under them.

The question now before us, however, is not, what effect an adjudication in this case in favor of the complainants may have in future suits, but whether the commissioner erred to their prejudice in his decision upon the interference; and, for the reasons already stated, that decision was erroneous in awarding priority of invention to Shaw upon the broad claim stated in the declaration of interference, to the detriment of Butler's first claim, on which he was clearly entitled to a patent.

The position of the defendant, that Butler is precluded, by having taken out the patent of January 31, 1882, from now asserting his first claim, cannot be sustained. The application for that patent was filed by Butler after the decision against him upon the interference, and after repeated rejection by the primary examiner of his first and third claims. His object in filing it evidently was to secure so much of his invention as the patent-office was willing to allow to him, without intending to abandon his effort to procure a reversal of its action in other respects. After the filing of his last application, he continued diligently to prosecute his appeal to the board of examiners and to the commissioner of patents from the rejection of his former application; and the present bill to review the adverse decision of the commissioner upon the interference was filed within a year after that decision was made. Under these circumstances, no intention to abandon the claims asserted in the bill can be inferred from his having meanwhile applied for and taken out the patent of January 31, 1882. *Suffolk Co.* v. *Hayden*, 3 Wall. 315; *Adams* v. *Jones*, 1 Fisher, Pat. Cas. 527; *Graham* v. *McCormick*, 10 Biss. 39; *McMillin* v. *Rees*, 5 Ban. & A. 269.

The question of the validity of that patent is not presented by this bill. Nor is it necessary, for the decision of this case, to consider the question, strongly contested at the bar, whether Shaw's invention was prior in time to Butler's. Neither of those questions, therefore, is passed upon or concluded by this opinion.

The last clause of section 4915 of the Revised Statutes, requiring the applicant to pay all the expenses of the proceeding whether the final decision is in his favor or not, is, in manifest intention, if not by unavoidable construction, limited to cases in which there is no opposing party other than the commissioner of patents, and in which, therefore, the costs, if not paid by the applicant, would fall upon the commissioner, and upon the government whose officer he is. Whenever there are opposing parties, as in a contested case of interference, the ordinary rule should be followed, and costs be awarded to the party prevailing.

The result is that while Butler is not entitled to a patent on his third claim, there must be a decree that he is entitled, according to law, to receive a patent for the invention specified in his first claim, and for costs. Decree for the complainants accordingly.