## BROWNING v. JOHNSON.

(Court of Appeals of District of Columbia. Submitted March 17, 1921. Decided April 4, 1921.)

### No. 1407.

**1. Patents ⬤⇒91(4)—Evidence held to show prior conception and reduction to practice by junior applicant.**

  Evidence in interference proceedings *held* to establish a conception and reduction to practice of the invention in issue by the junior applicant at a date long prior to the earliest date alleged by the senior applicant for his conception of the invention.

**2. Patents ⬤⇒91(4)—Evidence held to show senior applicant derived invention from junior.**

  Evidence that the junior applicant conceived the invention long prior to the date claimed by the senior applicant, and that he exhibited it to a patent solicitor, who showed it to the senior applicant, *held* to show that the senior applicant derived his invention from the junior applicant, and was not an original inventor.

**3. Patents ⬤⇒90(2)—Neither applicant nor assignee can charge party from whom they derived the invention with laches.**

  Where the evidence in interference proceedings showed that the senior applicant was not an original inventor, but that he derived the invention from the junior applicant, neither the senior applicant nor his assignee can charge the junior applicant with lack of diligence or laches, or estoppel by public use.

Appeal from the Commissioner of Patents.

Interference proceeding between John Bailey Browning and Eldridge R. Johnson. From a decision awarding priority to the latter, the former appeals. Reversed.

Melville Church, of Washington, D. C., and George W. Case, Jr., of New York City, for appellant.

Richard Eyre and William H. Kenyon, both of New York City, for appellee.

VAN ORSDEL, Associate Justice. The invention in interference relates to a talking machine with the mechanical parts inclosed in a cabinet. Prior to the invention in issue, the amplifying horn was situated on top of the reproducing mechanism and exposed to view. The present invention was designed to inclose the amplifier in the cabinet in such manner that it would give forth sufficient volume of sound. It also contemplates a plurality of doors to regulate the sound issuing from the amplifier. The issue is in a single count, as follows:

  "The combination with sound reproducing means, of a co-operating amplifier, a cabinet inclosing the major portion of said amplifier and provided with an opening, of substantially the same size as the delivery end of said amplifier, and means to vary the quality of the reproduction at will on either side of said cabinet."

The party Johnson filed his application January 12, 1906, on which a patent was issued January 11, 1910. The party Browning filed his ap-

plication January 18, 1908. Browning copied the claims in issue from the Johnson patent in June, 1915, at the suggestion of the Patent Office, for the purpose of interference.

[1] It appears that Browning, in 1897, prepared a rough drawing on the back of a dance card, disclosing the invention in issue. This was signed by Browning and certified to by two competent witnesses. This alone, we think, established conception and disclosure. This was followed, however, by other drawings and the construction of certain rough models, which clearly disclosed the invention. As Johnson's alleged conception is 1903, and the earliest date to which his proof will entitle him, is May, 1905, it must be held that Browning was the first to conceive and disclose the invention in issue.

It will be observed that we are here dealing with long periods of time. The action of neither party is indicative of great diligence. Browning conceived in 1897, reduced to practice by the construction of commercial machines at Kansas City, Mo., where he was then located, in the latter part of 1907, filed in 1908, and presented the present claim in response to the suggestion of the Patent Office in 1915. Johnson conceived in May, 1905, filed in January, 1906, put machines on the market, through his assignee, the Victor Talking Machine Company, in August, 1906, presented his claim corresponding to the present issue in December, 1909, and was awarded a patent January 11, 1910.

[2] But these dates are of little importance, since the case turns upon the single question of originality. Was Johnson an original inventor, or did he derive the invention from Browning? Browning entered the employ of the Victor Talking Machine Company, of which Johnson was the president, in 1901. His position was that of inspector of motors, indicating to some extent, at least, skilled knowledge of the business. In the summer of 1900, Browning, in company with his wife, took what is known as "Sketch Exhibit No. 7," which is a complete disclosure of the invention, to Mr. Horace Pettit, of Philadelphia, to ascertain the cost of procuring a patent. Pettit was at that time attorney for Johnson, and, after the organization of the Victor Talking Machine Company in 1901, he became its attorney, and continued such until the date of his death in 1914. The price named by Pettit for procuring a patent seemed high to the Brownings, and they expressed a desire to take time to consider it. Pettit suggested that the sketches be left with him and he would submit them to a client of his, a Mr. Johnson, of Camden, who was engaged in the business of manufacturing talking machines. Browning then attempted to induce a friend by the name of Stafford to take an interest in the invention and furnish the money necessary to secure a patent. To this end, Browning and Stafford visited Pettit's office to consult him with reference to the procuring of a patent. Pettit informed them that he had laid the matter before Johnson, but had failed to interest him in the invention; that a patent could be procured, but that they would not be able to market the machines, because of certain other existing patents. Following this interview, Stafford, who had taken further time to consider the matter, wrote Browning the following letter:

"2073 E. Elkhart St., Philadelphia, Penna. Oct. 20, 1900.

"Friend John: Your letter received. I think the price Mr. H. Pettit asks for securing us the patent on the two drawings he returned to you is too much. I don't understand his remarks about getting a patent, and not be allowed to sell the talking machine on account of some other patent. This probably explains why he was unable to interest his client, E. Johnson, that he mentioned. I will be over to see the machine next week and discuss the matters more fully. Sincerely yours,

"Rob."

These facts are positively testified to by Browning and his two corroborating witnesses. They are also strongly supported by corroborating circumstances. Browning also testifies to three disclosures, at least, of the invention to Johnson and to other officers of the Victor Talking Machine Company between 1901 and 1905. Johnson, on the excuse of sickness, failed to testify. Pettit was dead when the testimony was taken, and while others named by Browning in connection with the disclosures testified, no positive denial was interposed by any one of them in reference to the disclosure of the invention to Johnson and his associates. Unless we are to discredit by the wholesale competent witnesses who stand unimpeached, this record overwhelmingly discloses that Johnson derived the invention from Browning. Hence neither he nor his associates are entitled to benefit from the monopoly conferred by the patent.

[3] This disposes of the case, since neither Johnson nor his assignee is in position to charge Browning with lack of diligence, laches, or estoppel by public use, as has been attempted.

The decision is reversed.

Reversed.

Mr. Justice HITZ, of the Supreme Court of the District of Columbia, sat in the place of Mr. Justice ROBB in the hearing and determination of this appeal.