## VICTOR TALKING MACH. CO. v. BRUNSWICK–BALKE–COLLENDER CO. et al.

(District Court, D. Delaware. May 7, 1923.)

No. 458.

1. Patents ⚖114—Decision of Court of Appeals of District of Columbia in interference proceeding not conclusive of patentability.

Judgment of Court of Appeals of District of Columbia in an interference proceeding is not conclusive of patentability or priority, and the doctrines of res judicata and estoppel can have no application in a subsequent suit to have the patent adjudged invalid and void, under Rev. St. §§ 4904, 4909–4915 (Comp. St. §§ 9449, 9454–9460), Rev. St. D. C. § 780, and Act Feb. 9, 1893, § 9 (Comp. St. § 9456); but such judgment is admissible, and has evidential value, in the subsequent suit.

2. Patents ⚖328—Browning patent, No. 1,402,738; claim 1, held invalid and void.

Browning patent, No. 1,402,738, claim 1, relating to the talking machine art, *held* invalid and void.

3. Patents ⚖328—Johnson patent, No. 946,442, claim 19, held invalid.

Johnson patent, No. 946,442, claim 19, relating to the talking machine art, *held* invalid and void.

In Equity. Suit by the Victor Talking Machine Company against the Brunswick-Balke-Collender Company and another. Decree for defendant on bill, and for plaintiff on cross-bill.

See, also, 279 F. 758.

William Houston Kenyon, Frederick Bachmann, George W. Schurman, and George T. Bean, all of New York City, John D. Myers, of Camden, N. J., and Charles F. Curley, of Wilmington, Del., for plaintiff.

Melville Church, of Washington, D. C., George W. Case, Jr., of New York City, and William G. Mahaffy, of Wilmington, Del., for defendants.

MORRIS, District Judge. The issue in an interference declared by the Patent Office between claim 19 of patent No. 946,442, issued to Eldridge R. Johnson, assignor to Victor Talking Machine Company, and claim No. 30 of application No. 411,454, filed by John Bailey Browning, was decided by the Court of Appeals of the District of Columbia in favor of Browning. 50 App. D. C. 335, 271 Fed. 1017. Thereafter patent No. 1,402,738, containing, as claim 1, the claim in interference, was issued to Browning, assignor by mesne assignments of ⁵¹/₁₀₀ to the Brunswick-Balke-Collender Company. Thereupon the Victor Company instituted against Browning and the Brunswick-Balke-Collender Company this interference suit in equity under R. S. U. S. § 4918 (Comp. St. § 9463), to have claim 1 of the Browning patent adjudged invalid and void. The answer of the defendants prays for like relief with respect to claim 19 of the Johnson patent. The case has been heard upon bill, answer, exhibits, depositions, and testimony on the part of the plaintiff taken in open court.

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The defendants, relying upon the decision of the Court of Appeals
of the District of Columbia (put in evidence by the plaintiff probably
to show an exhaustion of Patent Office remedies, Smith v. Muller [C.
C.] 75 Fed. 612; McKnight v. Metal Volatilization Co. [C. C.] 128
Fed. 51; Prindle v. Brown [C. C.] 136 Fed. 616), rested their case
without offering any evidence. They contend that the decision of the
Court of Appeals is a judgment with all the incidents and consequences·
of a judgment; that it is conclusive herein until set aside; that it
may be set aside only on the grounds of fraud, accident, mistake, or
other grounds sufficient to afford equitable relief against any other
judgment; that this suit is, in legal effect, a suit in the nature of a
suit to set aside a judgment, but that the plaintiff, misconceiving its
nature, has adduced evidence, not of the character required to set aside
a judgment, but only of the kind that would tend to uphold plaintiff's
patent, had there been no prior adjudication with respect thereto.
They further contend, as I understand it, that if the decision of the
Court of Appeals is not technically a judgment, yet its decision is in
the nature of a judgment, was rendered by a tribunal of great dignity
in a proceeding of like character between the same parties, and should
be controlling, unless overcome by evidence that carries thorough con-
viction or conviction beyond a reasonable doubt, and that upon this
theory, also, the plaintiff has failed to make out a case for relief.

The position of the plaintiff is that the decision of the Court of
Appeals is not a judgment; that in this suit the interference issue is
tried de novo upon new evidence; that the decision of the Court of
Appeals is without evidential or other value in this case, save that
based upon comity (see Walker on Patents, §§ 635, 634); and that,
the evidence before the Court of Appeals not having been admitted as
a whole in this case, new evidence having been here produced by the
plaintiff, and no evidence having been produced by the defendants, a
different state of evidence exists, and the decision of the Court of
Appeals is here wholly without effect.

As the Patent Office interference proceeding is purely statutory, and
as the jurisdiction of the Court of Appeals of the District of Columbia
in such proceedings is likewise statutory, the first step in the solution
of these problems must consist of an examination of the statutes per-
taining thereto, the more important of which are:

"Sec. 4904. Whenever an application is made for a patent which, in the
opinion of the Commissioner, would interfere with any pending application,
or with any unexpired patent, he shall give notice thereof to the applicants,
or applicant and patentee, as the case may be, and shall direct the primary
examiner to proceed to determine the question of priority of invention. And
the Commissioner may issue a patent to the party who is adjudged the prior
inventor, unless the adverse party appeals from the decision of the primary
examiner, or of the board of examiners in chief, as the case may be, within
such time, not less than twenty days, as the Commissioner shall prescribe."
Comp. St. § 9449.

"Sec. 4909. Every applicant for a patent or for the reissue of a patent,
any of the claims of which have been twice rejected, and every party to
an interference, may appeal from the decision of the primary examiner, or
of the examiner in charge of interferences in such case, to the board of
examiners in chief, having once paid the fee for such appeal." Comp. St.
§ 9454.

"Sec. 4910. If such party is dissatisfied with the decision of the examiners in chief, he may, on payment of the fee prescribed appeal to the Commissioner in person." Comp. St. § 9455.

"Sec. 4911. If such party, except a party to an interference, is dissatisfied with the decision of the Commissioner, he may appeal to the Supreme Court of the District of Columbia, sitting in banc."

"Sec. 4912. When an appeal is taken to the Supreme Court of the District of Columbia, the appellant shall give notice thereof to the Commissioner, and file in the Patent Office, within such time as the Commissioner shall appoint, his reasons of appeal, specifically set forth in writing." Comp. St. § 9457.

"Sec. 4913. The court shall, before hearing such appeal, give notice to the Commissioner of the time and place of the hearing, and on receiving such notice the Commissioner shall give notice of such time and place in such manner as the court may prescribe, to all parties who appear to be interested therein. The party appealing shall lay before the court certified copies of all the original papers and evidence in the case, and the Commissioner shall furnish the court with the grounds of his decision, fully set forth in writing, touching all the points involved by the reasons of appeal. And at the request of any party interested, or of the court, the Commissioner and the examiners may be examined under oath, in explanation of the principles of the thing for which a patent is demanded." Comp. St. § 9458.

"Sec. 4914. The court, on petition, shall hear and determine such appeal, and revise the decision appealed from in a summary way, on the evidence produced before the Commissioner, at such early and convenient time as the court may appoint; and the revision shall be confined to the points set forth in the reasons of appeal. After hearing the case the court shall return to the Commissioner a certificate of its proceedings and decision, which shall be entered of record in the Patent Office, and shall govern the further proceedings in the case. But no opinion or decision of the court in any such case shall preclude any person interested from the right to contest the validity of such patent in any court wherein the same may be called in question." Comp. St. § 9459.

"Sec. 4915. Whenever a patent on application is refused, either by the Commissioner of Patents or by the Supreme Court of the District of Columbia upon appeal from the Commissioner, the applicant may have remedy by bill in equity; and the court having cognizance thereof, on notice to adverse parties and other due proceedings had, may adjudge that such applicant is entitled, according to law, to receive a patent for his invention, as specified in his claim, or for any part thereof, as the facts in the case may appear. And such adjudication, if it be in favor of the right of the applicant, shall authorize the Commissioner to issue such patent on the applicant filing in the Patent Office a copy of the adjudication, and otherwise complying with the requirements of law. In all cases, where there is no opposing party, a copy of the bill shall be served on the Commissioner; and all the expenses of the proceeding shall be paid by the applicant, whether the final decision is in his favor or not." Comp. St. § 9460.

"Sec. 4918. Whenever there are interfering patents, any person interested in any one of them, or in the working of the invention claimed under either of them, may have relief against the interfering patentee, and all parties interested under him, by suit in equity against the owners of the interfering patent; and the court, on notice to adverse parties, and other due proceedings had according to the course of equity, may adjudge and declare either of the patents void in whole or in part, or inoperative, or invalid in any particular part of the United States, according to the interest of the parties in the patent or the invention patented. But no such judgment or adjudication shall affect the right of any person except the parties to the suit and those deriving title under them subsequent to the rendition of such judgment." Comp. St. § 9463.

Section 780 of the R. S. U. S., relating to the District of Columbia:

"The Supreme Court, sitting in banc, shall have jurisdiction of and shall hear and determine all appeals from the decisions of the Commissioner of

Patents, in accordance with the provisions of section forty-nine hundred and eleven to section forty-nine hundred and fifteen, inclusive, of chapter one, title LX, of the Revised Statutes, 'Patents, Trade-Marks, and Copyrights.' "

Section 9 of "An act to establish a Court of Appeals for the District of Columbia, and for other purposes," 27 Stat. c. 74, approved February 9, 1893, provides:

"That the determination of appeals from the decision of the Commissioner of Patents, now vested in the general term of the Supreme Court of the District of Columbia, in pursuance of the provisions of section seven hundred and eighty of the Revised Statutes of the United States, relating to the District of Columbia, shall hereafter be and the same is hereby vested in the Court of Appeals created by this act; and in addition, any party aggrieved by a decision of the Commissioner of Patents in any interference case may appeal therefrom to said Court of Appeals." Comp. St. § 9456.

An analysis of those statutes discloses that, prior to the passage of the act of 1893, every party to an interference and every unsuccessful applicant for a patent, not a party to an interference, was entitled to appeal from the decision of the primary examiner, or of the examiner in charge of interferences, to the board of examiners in chief, and from the decision of that board to the Commissioner. At that point the right of appeal of a party to an interference terminated. Only the unsuccessful applicant in an ex parte case was given a further right of appeal. It lay to the Supreme Court of the District of Columbia. R. S. §§ 4911 to 4914, granted the right to such further appeal, governed the procedure, and limited the effect of the decision of the court, if favorable to the appellant, in such ex parte cases. The jurisdiction of that court being expressly restricted to ex parte cases, the last sentence of section 4914, limiting the effect of its decision, was clearly founded on sound reason.

But a question lying at the threshold of this case is whether the act of 1893, which transferred from the Supreme Court to the Court of Appeals of the District of Columbia the jurisdiction of appeals from the decision of the Commissioner of Patents in ex parte cases, and in addition gave to any party aggrieved by a decision of the Commissioner in an interference case an appeal to that Court of Appeals, made the appeals in interference cases subject to the provisions of sections 4911 to 4914, and particularly to the last sentence of section 4914, limiting the effect of the decision upon appeal. If the question were res integra, the contention that Congress did not by that act make those sections of the Revised Statutes or any provision thereof applicable to appeals in an interference would be, probably, not without force. They were not expressly made applicable. The act of 1893 does not even expressly strike out the exception in section 4911, denying the right of appeal to a party to an interference. Had the statute taken that form, sections 4911 to 4914 would, by necessary implication, have been as applicable to appeals and decisions in contested cases as in ex parte cases.

But, instead of taking that form, it confers the right of appeal in interference cases in the most general terms. Several reasons might be advanced why R. S. §§ 4911 to 4914, should not under such circumstances be read into the act of 1893 by implication. For instance,

no legal principle has been invoked by counsel here which would obviously and necessarily make the limitations appropriate and proper to judgments in ex parte cases likewise appropriate to judgments in contested cases. The maxim "Nemo debet bis vexari pro una et eadem causa" would seem to militate against that conclusion. But without pursuing the matter further it suffices to say that the act of 1893 has now been authoritatively interpreted to the effect that the decision of the Court of Appeals "entitling a claimant to a patent, in either an ex parte or an interference proceeding, is not conclusive of either patentability or priority." The Supreme Court, in Morgan v. Daniels, 153 U. S. 120, 14 Sup. Ct. 772, 38 L. Ed. 657, held, in effect, that R. S. § 4915, alone would prevent finality being attributed to the decision of the Commissioner of Patents. If after the passage of the act of 1893 some doubt might have existed as to whether R. S. § 4918, is sufficient to prevent the judgment of the Court of Appeals from being final, that doubt would seem to have been removed by Frasch v. Moore, 211 U. S. 1, 29 Sup. Ct. 6, 53 L. Ed. 65, Johnson v. Mueser, 212 U. S. 283, 29 Sup. Ct. 390, 53 L. Ed. 514, and Baldwin Co. v. Howard Co., 256 U. S. 35, 41 Sup. Ct. 405, 65 L. Ed. 816. In Frasch v. Moore the Supreme Court quoted with approval Rousseau v. Brown, 21 App. D. C. 73, 80, as follows:

"There is no final judgment of this court rendered in such cases, nor is there any such judgment required or authorized to be rendered, not even for costs of the appeal. This court is simply required in such cases, after hearing and deciding the points as presented, instead of entering judgment here, to return to the Commissioner of Patents a certificate of the proceedings and decision of this court, to be entered of record in the Patent Office, to govern the further proceedings in the case. But it is declared by the statute that no opinion of this court in any such case shall preclude any person interested from the right to contest the validity of any patent that may be granted by the Commissioner of Patents. Rev. Stat. §§ 780, 4914."

Rousseau v. Brown was again approved by the Supreme Court in Baldwin Co. v. Howard Co., 256 U. S. 35, 41 Sup. Ct. 405, 65 L. Ed. 816. In Johnson v. Mueser, 212 U. S. 283, 29 Sup. Ct. 390, 53 L. Ed. 514, the Supreme Court quoted with approval Johnson v. Mueser, 29 App. D. C. 61, thus:

"It must be borne in mind that the final judgment of this court entitling a claimant to a patent, in either an ex parte or an interference proceeding, is not conclusive of either patentability or priority. The patent, when issued, may be attacked in the courts by parties whose interests may be affected by the monopoly claimed thereunder; and the defeated party has another remedy by proceeding in a court of equity, as provided in section 4915, Rev. Stat."

[1] Those cases are not, however, as I understand them, inconsistent with United States v. Duell, 172 U. S. 576, 588, 19 Sup. Ct. 286, 43 L. Ed. 559, which holds that a decision of the Court of Appeals on an appeal in an interference controversy is a "judgment." They merely deny finality to such judgment, save with respect to the particular action in the Patent Office. Yet they do, I think, authoritatively establish a principle which, interpreted in the terms of this case, means that the judgment of the Court of Appeals in favor of Browning is in this suit "not conclusive of either patentability or priority." That being

true, it inevitably follows that the doctrines of res adjudicata and estoppel can have no application in this suit. Jones on Evidence, § 594; Bernardin v. Northall (C. C.) 77 Fed. 849; Gold v. Gold, 237 Fed. 84, 150 C. C. A. 286; Scott v. Laas, 150 Fed. 764, 766, 30 C. C. A. 500.

In view of Johnson v. Mueser, supra, and like cases, I think a suit in equity under R. S. § 4918, between parties interested in interfering patents, is not different in character from a suit under R. S. § 4915. A suit under the latter section has been uniformly held to be an original, independent action, in which all questions in issue are tried de novo upon all competent evidence, new or old. Butterworth v. Hoe, 112 U. S. 50, 61, 5 Sup. Ct. 25, 28 L. Ed. 656; In re Hien, 166 U. S. 432, 17 Sup. Ct. 624, 41 L. Ed. 1066; Courson v. O'Connor (C. C. A. 7) 227 Fed. 890, 892, 142 C. C. A. 414; Gold v. Gold (C. C. A. 7) 237 Fed. 84, 150 C. C. A. 286; Curtiss Aeroplane & Motor Corporation v. Janin (C. C. A. 2) 278 Fed. 454, 455. Consequently evidence that would be admissible in a suit instituted under R. S. § 4915, is admissible in a suit instituted under R. S. § 4918, and so in this suit.

But neither the fact that the judgment of the Court of Appeals is here "not conclusive of either patentability or priority," nor the foregoing decisions with respect to the evidence upon which an interference suit in equity is to be tried, leave the judgment of the Court of Appeals either inadmissible or without evidential value in this case. The Supreme Court, in Morgan v. Daniels, 153 U. S. 120, 14 Sup. Ct. 772, 38 L. Ed. 657, decided before an appeal was allowed in an interference from the decision of the Commissioner of Patents, said:

"But this is something more than a mere appeal. It is an application to the court to set aside the action of one of the executive departments of the government. The one charged with the administration of the patent system had finished its investigations and made its determination with respect to the question of priority of invention. That determination gave to the defendant the exclusive rights of a patentee. A new proceeding is instituted in the courts—a proceeding to set aside the *conclusions* reached by the administrative department, and to give to the plaintiff the rights there awarded to the defendant. It is something in the nature of a suit to set aside a judgment, and as such is not to be sustained by a mere preponderance of evidence. Butler v. Shaw, 21 Fed. 321, 327. It is a controversy between two individuals over a question of fact, which has once been settled by a special tribunal intrusted with full power in the premises. As such it might be well argued, were it not for the terms of this statute, that the decision of the Patent Office was a finality upon every matter of fact. * * * Upon principle and authority, therefore, it must be laid down as a rule that, where the question decided in the Patent Office is one between contesting parties as to priority of invention, the *decision* there made must be accepted as *controlling* upon that question of fact in any subsequent suit between the same parties, *unless* the contrary is established by testimony which in character and amount carries thorough conviction." (Italics ours.)

Morgan v. Daniels has been considered in numerous cases, under various states of evidence, and with varying results. Novelty Glass Co. v. Brookfield (C. C. A. 3) 170 Fed. 946, 95 C. C. A. 516; Curtiss Aeroplane & Motor Corporation v. Janin (C. C. A. 2) 278 Fed. 454; Clements v. Kirby (C. C. A. 6) 274 Fed. 575; Greenwood v. Dover (C. C. A. 1) 194 Fed. 91, 94, 114 C. C. A. 169; Wendell v. American Laundry Machinery Co. (C. C. A. 3) 248 Fed. 698, 160 C. C. A. 598.

As I understand Morgan v. Daniels, it holds that the "decision" or "conclusions" in the Patent Office interference proceedings are of themselves evidence of every fact distinctly put in issue in that proceeding and necessarily decided therein, and not that such decision or conclusions are without evidential or other value, save that of persuasion upon the mind of a judge, when required to decide, upon the same or like evidence, a new suit instituted under R. S. § 4918. Moreover, it has been held many times that the ultimate decision in the Patent Office interference is evidence in an interference suit in equity. Pacific Cable Ry. Co. v. Butte City St. Ry. Co. (C. C.) 52 Fed. 863, 865; Chicopee Folding Box Co. v. Rogers (C. C.) 32 Fed. 695; Wire Book Sewing Machine Co. v. Stevenson (C. C.) 11 Fed. 155; Walker on Patents, § 318.

The admissibility of the judgment and the fact that it has evidential value being clear, the next question is as to the weight to be given to that judgment when admitted in evidence. If final, it would have been conclusive, not only of the point it professes to decide, but of all matters which it was necessary to decide, which must have been found in order to warrant or uphold the judgment, and which were actually determined as the groundwork of the judgment. Jones on Evidence, §§ 585, 597. Under the express authority of Morgan v. Daniels, the judgment, though not final, is conclusive upon the question of priority of invention, unless overcome by evidence carrying thorough conviction, an inevitable consequence of which is that it is in like degree conclusive with respect to every fact of which it would have been absolutely conclusive, had it been final.

Giving to the judgment of the Court of Appeals, and so to the findings of fact underlying that judgment, only such weight as would shift the burden of proof from the defendant here to the plaintiff, would be giving it no greater weight than if there had been no Patent Office interference proceeding at all. It would be giving to the judgment of the Court of Appeals no greater effect than would be given to the bare issuance of the Browning patent, had the examiners inadvertently overlooked the Johnson patent, and issued the Browning patent without declaring an interference. Obviously, that would be neither reasonable nor a compliance with the requirements of Morgan v. Daniels. Even in the ordinary patent infringement suit the presumption of validity of the patent is strengthened by the circumstance that an alleged anticipating patent was considered by the Patent Office in connection with the application for the patent in suit. Walker on Patents, § 491.

Manifestly the findings of the Court of Appeals in a strongly contested interference proceeding, made upon voluminous evidence and after the three prior decisions in that proceeding, have an evidential value greatly in excess of the presumption of validity that attaches to a patent when issued after consideration by the Patent Office of an alleged anticipating patent. It thus becomes clear, I think, that the statement in Morgan v. Daniels, giving to the finding of the Commissioner of Patents a weight and value barely short of controlling, was not thoughtlessly or carelessly made. Morgan v. Daniels has not, I

think, been modified or overruled, by the cases hereinbefore referred to or otherwise. Obviously the decision of the Circuit Court of Appeals is not more readily overcome than is a decision of the Commissioner of Patents. Let us now test the plaintiff's evidence by the rule of Morgan v. Daniels.

[2, 3] The Johnson patent was issued January 11, 1910, upon an application filed January 12, 1906. The Browning patent was issued January 10, 1922, upon a divisional application filed August 17, 1921; the original application having been filed January 18, 1908. Both relate to the talking machine art. Claim 19 of the Johnson patent and claim 1 of the Browning patent read thus:

"The combination, with sound-reproducing means, of a co-operating amplifier, a cabinet inclosing the major portion of said amplifier and provided with an opening of substantially the same size as the delivery end of said amplifier, and means to vary the quality of the reproduction at will on either side of said cabinet."

For the purpose of interference and at the suggestion of the Patent Office, Browning copied the claim from the Johnson patent in June, 1915. In the interference proceeding the decision of the examiner of interferences was in favor of Browning. The board of examiners in chief and the Commissioner decided in Johnson's favor. The Court of Appeals awarded priority to Browning (50 App. D. C. 335, 271 Fed. 1017) and caused its opinion mandate to be entered of record in the Patent Office. A certified copy of each of the four decisions was put in evidence by the plaintiff. In some cases in which the whole of the evidence taken in the Patent Office proceeding has been admitted in evidence in the suit in equity, the equity court has reweighed that evidence, and upon a demonstration of a plain mistake by the Court of Appeals has overturned the conclusions of that court. Inasmuch, however, as only a portion of the evidence taken in the Patent Office interference is in evidence in this suit, it is impossible for this court to say that the Court of Appeals was mistaken in its conclusions upon the testimony before it. Consequently its conclusions must prevail here, unless that part of the evidence, taken in this suit, which was not in the Patent Office proceeding is of such character and amount as to carry thorough conviction that the findings of the Court of Appeals cannot be right. The certified copies of the several decisions in the Patent Office interference may be looked at to see what matters were there in issue, actually and necessarily decided, and the grounds upon which those decisions were based. Jones on Evidence, § 597. The Court of Appeals held that Johnson derived the invention in interference from Browning.

In support of its contention that the evidence in this case establishes that Johnson did not derive that invention from Browning, but, on the contrary, that he (Johnson) was a true and original inventor thereof, the plaintiff points to the statutory oath made by Johnson at the time of the filing of his application in January, 1906. The testimony here given by Johnson that he believes himself to be the original inventor and that he derived no part of his knowledge or information of the invention from Browning or from any one else, directly or indirectly. It

urges that the testimony of Johnson is corroborated by testimony of Douglass and MacEwan to the effect that Johnson made disclosures of the invention to them in 1902 and 1903; by the testimony of Mac-Ewan, Townsend, and Medara that in the fall of 1903 Johnson caused to be constructed a talking machine embodying the invention in interference; by the testimony of MacEwan, Johnson, Douglass, and Babson that the machine so constructed, known as the "small Medara" was tested and used in the fall of 1903, and that it then demonstrated the complete success of the invention; by the testimony of Johnson, Diehl, and MacEwan that the combination was then complete and operative and satisfactory for home use, though not loud enough for concert halls or dancing, and that its construction was followed by a long period of horn development; by the testimony of Johnson, MacEwan, Diehl, Troth, and Young with respect to the cabinet development, culminating in May, 1905, in the Stevens machine, having two doors in front of the horn, and in the Sheip machine, with like doors, in August and September, 1905; by the testimony of Johnson, MacEwan, Diehl, Troth, Douglass and Fitts with respect to development for factory production and the placing of the machine on the market in August, 1906; by a stipulation showing growth of the business from August, 1906, to 1915, and by the application for the patent in January, 1906. Johnson, Douglass, Babson, and Young did not testify in the Patent Office proceedings.

The plaintiff further contends that Johnson's testimony that he was a true and original inventor of the subject-matter of the claim in interference is corroborated, and Browning's claim to the contrary is weakened, by Browning's course of conduct from August, 1906, when to Browning's knowledge plaintiff's machines were put on the market, down to June, 1915, when the Johnson claim was copied into the Browning application. I think, however, that the evidence thus pointed out is not sufficient to overcome the evidential value of the finding of the Court of Appeals that Johnson derived the invention from Browning. Necessarily the statutory oath was made by Johnson when he filed his application for his patent. At the time of the Patent Office proceeding that oath stood as a sworn general denial by Johnson of all charges of lack of originality. His testimony here is not substantially different from what was embodied expressly or by necessary implication in the statutory oath. It is scarcely less general. Consequently, Johnson's testimony in this case that he believes himself to be the original inventor, and that he derived no part of his knowledge or information of the invention from Browning, does not, in effect, materially change the plaintiff's case from what it was when before the Court of Appeals. The testimony with respect to Johnson's reduction to practice in the year 1903 by means of the small Medara cabinet cannot in any sense be held to negative the disclosure found by the Court of Appeals to have been made by Browning to Johnson in 1900, nor do I think that testimony sufficient to overcome the finding of the Court of Appeals of disclosures made by Browning to Johnson and other officers of the plaintiff company between 1901 and 1905.

Much of the testimony here taken with respect to the small Medara cabinet was produced in the Patent Office proceedings. The remainder

is merely cumulative. It is not documentary, but depends entirely upon the recollection of witnesses. The unaided memory is called upon after a long lapse of years, not only to reconstruct the absent, but critical, portion of the small Medara cabinet, but also to fix the time when the cabinet was so constructed. The drawings of the cabinet do not show doors. There are no doors now on the cabinet. The doors alleged to have been thereon have not been produced. There is no record evidence that a plurality of doors was on the cabinet at any time. The horns, here produced, which, according to the evidence, were used in that cabinet, are all too long to have permitted the closing of the doors, if doors there were. The one shorter horn that, as some of the testimony states, was used therein, has, like the doors, not been produced. The persons who testify that the small Medara cabinet was made with double doors in 1903 also testify that the doors were then demonstrated to be entirely satisfactory. Mute but persuasive evidence that such witnesses are mistaken, at least as to the date, is found in Johnson's patent No. 856,704, applied for in December, 1904, which covers a single-door, and not a double-door, cabinet. No explanation is advanced to make plain why a patent for the single-door cabinet was applied for in 1904, while that for the double-door cabinet was delayed until 1906, if the double-door cabinet was in fact reduced to practice by Johnson in 1903.

The testimony with respect to the development of the cabinet during and after May, 1905, the placing of the machine on the market in 1906, and the subsequent growth of plaintiff's business has little pertinency to the issue of originality. It is not at all inconsistent, I think, with the finding of the Court of Appeals that Browning, not Johnson, was the original inventor. The testimony relating to Browning's course of conduct from the date the plaintiff's machine was placed upon the market until June, 1915, is not shown to be different in character from the testimony produced by the Victor Company in the Patent Office interference with respect to the same matter. I think a more detailed analysis of the testimony would serve no useful purpose. I am of the opinion that none of the findings of the Court of Appeals has been overcome by testimony which in character and amount carries thorough conviction, and that, consequently, those findings must, upon the authority of Morgan v. Daniels, be here accepted as controlling.

Upon the declaration of interference a motion was made by the Victor Company to dissolve it on the ground of laches. Both the law examiner and the board of examiners sustained the motion. The Commissioner, conceiving that Browning might "be able to make a showing which would justify his delay," reversed the board of examiners and directed the examiner of interferences to set times for the taking of testimony. The Court of Appeals, holding that neither Johnson nor his assignee was in a position to raise the question of Browning's laches, made no finding with respect thereto. After the filing of the opinion mandate of the Court of Appeals, the Patent Office reviewed the question of Browning's laches from the standpoint of the public. The law examiner held that claim 19 of Browning's original application and claim 19 of the Johnson patent were directed to the

same subject-matter of invention, and that, consequently, laches could not be attributed to Browning with respect to the invention of his claim theretofore in interference. Hence the patent was issued.

The Court of Appeals had before it only the question of priority of invention and matters subordinate and pertinent thereto. This court is not so restricted. It may determine whether either of the patents is void on any ground. Walker on Patents, § 317. The defendants have not intimated that claim 1 of the Browning patent may not here be held void on the ground of abandonment, if the evidence so warrants. Assuming that claim 19 of Browning's original application and claim 19 of the Johnson patent, No. 946,442, were directed to the same subject-matter of invention, as held by the law examiner, yet Browning, by amendment, struck that claim out of his application April 4, 1911. His present claim 1 was not inserted until June, 1915. Under the circumstances then existing the public interest required that Browning should not be lacking in diligence. Were Browning's claim allowed to stand, the public will be deprived of the use of the invention thereof until 1939—29 years from the date of the Johnson patent. Browning's delay of over 4 years after April, 1911, before renewing his claim has not been explained. I think that by reason thereof he must be held to have abandoned it.

I am of the opinion that a decree adjudging claim 19 of Johnson patent, No. 946,442, void on the ground that the applicant was not the true and original inventor of the claimed invention, and adjudging claim 1 of Browning patent, No. 1,402,738, void on the ground of abandonment, should be entered.