WIREBOUNDS PATENTS CO. et al. v. SARANAC AUTOMATIC MACH. CORPORATION.

District Court, W. D. Michigan, S. D. July 9, 1927.

No. 2029.

1. Patents ☞328—1,128,252, for method of making boxes held void for laches.

Inwood and Lavenberg patent, No. 1,128,-252, for method of making boxes, granted on a divisional application, not filed until nine years after the original application of which it was a division, *held* void for laches, because of such unexcused delay.

2. Patents ☞328—1,128,144 and 1,128,145, relating to machines for making wirebound boxes, held not infringed.

Inwood and Lavenberg patents, No, 1,128,-144, for combined carriage and former for wirebound box machines, and No. 1,128,145, for means for making box blanks, *held* not infringed.

In Equity. Suit by the Wirebounds Patents Company and the 4-One Box Machine Makers against the Saranac Automatic Machine Corporation. Decree for defendant.

Knappen, Uhl & Bryant, of Grand Rapids, Mich., and Emery, Booth, Janney & Varney, of Chicago, Ill., for plaintiffs.

Rice & Rice, of Grand Rapids, Mich., and Cheever & Cox, of Chicago, Ill., for defendant.

RAYMOND, District Judge. The three patents in suit relate to two machines and a method for producing wirebound boxes. These were issued February 9, 1915, to Inwood and Lavenberg, and are No. 1,128,144 for "combined carriage and former for wirebound box machines," application filed October 14, 1904, referred to hereinafter as the workholder patent; No. 1,128,145, for "means for making box blanks," application filed October 27, 1904, referred to hereinafter as stapling machine patent; and No. 1,128,252, for "method of making boxes," application filed April 21, 1914, hereinafter referred to as the method patent, this patent being a division of the workholder patent. An expired patent necessarily involved in this controversy resulted from invention substantially contemporaneous with the others, and was issued upon a wirebound box which was the product of the above-mentioned patents. This application was filed October 17, 1904, patent issued September 19, 1905, and reissued November 26, 1907, as No. 12,725.

Plaintiffs are the owner and exclusive licensee, respectively, of the patents in suit. The defendant is the manufacturer and lessor or licensor of machinery for making wirebound boxes.

The history of the prior art briefly stated discloses that for a period of about 10 years prior to these inventions a series of inventors (known for convenience as the Rosback inventors) had endeavored to produce a box to replace the nailed box then in general use; the principal object sought being to combine strength, lightness, flexibility, possibility of use of cheap materials, and economical production. These efforts resulted in failure, although it is evident that the conception was present that thin veneer and cleats might be co-ordinated with wire in some manner to produce the desired result. The nearest approach to success was the use of a single sheet of selected veneer, long enough to supply the four sides of the box, assembled with cleat material of substantially the same length. Wire was stapled to this single veneer sheet, thereby producing a rigid blank, which was pushed through a step-mitering machine, which cut the cleat strips into four lengths, trimmed the two ends of the blanks, and simultaneously step-mitered the respective cleat ends and lightly scored the long veneer sheet along the folding lines to facilitate bending. This method produced a box which was light and strong, but which lacked flexibility and elasticity.

The substantial obstacles encountered, however, were the impossibility of automatic or partly automatic production and the checking and occasional breaking of the veneer sheets at or near the corners of the boxes. The comparison of the method and results produced by the Rosback inventors and that of Inwood and Lavenberg is concisely stated in the specifications of the box patent as follows:

"The present method of manufacturing wirebound boxes is to form the blank of a single sheet stitched or stapled to single piece cleats for each end of the box, the cleats being step-mitered and the sheets scored or grooved on the underside, so as to form four sections, after the cleats, sheets, and reinforcing wires have been stapled together. This box blank, when folded, forms a rounding edge; the veneer sheets, if not thoroughly seasoned so as to have pliability, begin to check as the lumber seasons. As the grain of the wood may be diagonal to the edge of the box, the check will follow the grain, thus rendering the box unsightly, besides a possible opening of a size so as to preclude its use for goods requiring a tight-jointed box. * * *

"Our invention relates to certain improve-

ments in wirebound boxes, especially of that class in which the blanks constituting the four sides of the box are assembled and secured in relative position to each other *prior* to folding by reinforcing wires, and has for its object the assembling and fastening together such parts constituting the completed blank so that the same when folded will produce overlapping edges of the side sheets or boards, the advantages of which will be hereafter pointed out."

The underlying concept of the patents in suit is stated by plaintiffs to be the mechanical positioning of cleats and sheets in coordinated foldable relationships, so that the immediate product of the machine shall be the foldable blank having relationships and coordination of its parts in the finished box definitely predetermined. This is accomplished by the assembly of cleats and sheets upon a workholder in relationship to each other determined by mechanical positioning devices, these relationships being perpetuated by binding wires and staples. Rosback and his associates propelled raw material strips through a blank machine to produce a rigid blank, which had to be made foldable at a subsequent step by means of a step-mitering machine. Plaintiffs' expert states the comparison concisely as follows:

"The Rosback practices had taught the idea of producing foldable relationships by the operation of cutting the preliminary rigid blank. Inwood and Lavenberg rejected that teaching and solved their problem by relatively positioning and wiring together entirely separate parts in such manner that their intended co-operation in the finished box should be ensured. In brief, Rosback taught the production of foldable relationships by *cutting*. Inwood and Lavenberg produced a flexible box blank by an *assembling* and wiring together of separate elements."

The validity of the wirebound box patent No. 12,725 was sustained in the case of Wirebounds Patents Co. v. Chicago Mill & Lumber Co. (D. C.) 238 F. 929. This patent expired September 19, 1922, and the public has thereby acquired certain rights, the precise nature of which is an important element of this controversy. As a result of litigation and interference proceedings, the two machine patents applied for in October, 1904, were not issued until February 9, 1915.

By original and two supplemental bills of complaint three species of infringement by defendant are alleged. The first species involves a blank machine and method, in which the blank produced on the machine was made up of four side sheets and two pairs of cleats; the third and fourth pairs of cleats being added with the blank at a later stage in the method, this being denominated the alternate cleat method. The second species of alleged infringement involves a machine and method whereby the blank machine receives four side sheets and four pairs of cleats, two pairs of cleats having been pretacked to their respective side sheets; this being called the precleated method. The third species of infringement, which is set forth in the second supplemental bill, relates to a blank machine and method characterized by the use of four side sheets and four pairs of cleats, all of which are detached from each other when they are put on the blank machine. This method is referred to as the full-cleated method. It is asserted that by this third species of alleged infringement defendant has adopted precisely the practice disclosed by the patents in suit, namely, the assembly of eight loose cleats and four loose side sheets upon a blank machine or workholder, which is a mechanical device for positioning preformed and predimensioned box parts for co-operative foldable relationships, so that binding wires may be stapled to the box parts, to the end that all of the box parts are connected with wires which perpetuate the relationships in which the box parts are assembled.

The parties agree that there is no material difference between these three machines and methods, excepting that by the practice of the third method defendant has drawn nearer to the patents in suit; machinery for practicing the third method being fundamentally and in principle the same as the machines previously complained of. It follows, therefore, that, if the use of defendant's third machine and method does not constitute infringement, neither do the first and second machines and methods.

It seems to the court that plaintiffs' expert has correctly expressed the improvement of the Inwood and Lavenberg patents over the preceding Rosback inventions in the comparison hereinbefore quoted, namely, that Rosback taught the production of foldable relationships by cutting, while Inwood and Lavenberg taught the production of foldable relationships by assembling and wiring together separate box elements. The Inwood and Lavenberg method produced a box having the merits sought. An important question here presented is whether the essential elements of that method of production are now open to public use by reason of the expiration of the box patent, or whether, by

24 F.(2d)—55½

reason of the grant of the method patent nearly 10 years later, plaintiff still has the right to enjoy for a considerable period the exclusive use of the method disclosed in the method patent. Careful consideration of the evidence results in the conclusion that neither the so-called modified Rosback method, nor any other method suggested for producing the box, are commercially practical, though they may be theoretically possible. [1] The method patent in suit presents an anomalous history. Notwithstanding the fact that the specifications of the box patent fully disclosed the essential difference between the prior methods and the method by which the box could be produced, no claims were at any time made, in connection therewith, which would indicate to the public that applicants believed the method to be patentable. It is true that on November 2, 1904, Inwood and Lavenberg filed method claims in the stapling machine application. On December 31, 1904, however, the Patent Office objected to the amendment, and in so doing used the following language:

"The proposed amendment, filed November 2, 1904, has not been entered. There is no foundation for method claims in this case. Moreover, this amendment cannot be entered, unless accompanied by a supplemental oath, and the amendment is refused admission for that reason. It is to be noted, however, that the alleged method claims are not believed to cover proper methods, but merely the operation of the machine covered by the other claims in the case, so that, even if this amendment were supported by a supplemental oath and entered, the method claims contained therein would be subject to rejection."

On January 16, 1905, the Commissioner of Patents was instructed by the attorneys for applicants to cancel the proposed amendment. This was clearly an abandonment of the method claims. No method claim was again filed until March 30, 1912. This claim was required by the Examiner to be erased, because directed to divisional subject-matter. Method claims were again filed April 8, 1913, and again required to be erased for the same reason. The claims for method patent were not again filed until March 14, 1914, at which time they were filed as an amendment to the workholder application, whereupon it was directed by the Examiner that the claim must be presented in a separate application, because directed to divisional subject-matter. This resulted in the application for method patent filed April 21, 1914, upon which the method patent in suit was issued.

At the time this application was filed the method disclosed by the box patent had been in use for considerably over 9 years. Careful consideration of the testimony in this case discloses no sufficient reason why Inwood and Lavenberg should not have filed their divisional application long before the date upon which it was actually filed. It appears from the evidence that the interference in which the two machine patents were involved had nothing whatever to do with the method or process. There being no evidence of inadvertence, accident, or mistake, it seems to the court that the long delay of Inwood and Lavenberg in filing the divisional application constitutes laches, invalidating the patent issued thereon. No special circumstances sufficient to explain the delay have been established. See Webster Electric Co. v. Splitdorf Electric Co., 264 U. S. 463, 44 S. Ct. 342, 68 L. Ed. 792; Victor Talking Machine Co. v. Brunswick-Balke-Collender Co. et al. (D. C.) 290 F. 565; Id. (C. C. A.) 8 F.(2d) 41.

[2] In this case, therefore, the product patent having expired, the public has become entitled to produce the box by the method disclosed by the patent. As previously stated, the reissue box patent expired September 19, 1922, and on that date the defendant and the public had the right to begin making and using the box blank and the method of manufacture thereof disclosed by this patent. It appears to the court that, as soon as the method disclosed in the box patent was divulged, it became obvious to those familiar with the prior Rosback inventions that, in order to produce the Inwood and Lavenberg box blank, it would be necessary only to add the extra pushers called for by the extra pieces of a different form of blank, and that so to do was a matter merely of the exercise of ordinary mechanical skill. The machine used by defendant is nothing more than the Rosback machine with additional pushers placed on the feed chains. Consequently there is no infringement of the method patent, nor of the machine or workholder patents.

A decree will therefore be entered, dismissing the bill of complaint.